[Civ. No. 3241. Third Appellate District.—December 28, 1927.]

STERLING P. FORREST, Jr., Respondent, v. ROYAL INSURANCE COMPANY (a Corporation) et al., Appellants.

Ford, Johnson & Bourquin and Leo C. Dunnell for Appellants.

H. Nelson French and Ralph H. Cowing for Respondent.

WEYAND, J., *pro tem.*—Appellant C. H. Spurlock on or about October 16, 1923, insured his automobile with the Royal Insurance Company, which said company is also an appellant herein. This insurance was secured by said Spurlock through one Augustine N. Trainor, who was at said time acting as agent of said company at Fairfield, Solano County, California. While this insurance was in force and effect the car of Spurlock was stolen from Spurlock and the same was thereafter found in Oakland, California, in a damaged condition. Appellant Spurlock reported the theft of the machine to the agent Trainor, and Trainor in turn reported the theft to the Royal Insurance Company. Spurlock requested of Trainor that the repairs that were necessary to put the automobile in the condition it was before the theft be made by Sterling P. Forrest, Jr., the respondent herein. Forrest's place of business was, however, in the city of Sacramento. Spurlock agreed to tow the automobile to Forrest's place of business in Sacramento. The insurance company, through Trainor, consented to this arrangement, and the injured machine was by Spurlock brought to the garage of plaintiff for repairs. In addition to the repairs that were caused by reason of the theft, Spurlock on his own account had some small repairs made and for which he paid on the day of the delivery of the automobile by Forrest to one B. W. McKay, whose connection with the affair will be now stated. According to the policy of insurance it became the obligation of the insuring company to have the car repaired and placed in as good a condition as it was before the theft. When appellant Spurlock was informed that the machine was fully repaired and ready for delivery he again went to the agent Trainor and Trainor then in-

structed Spurlock to be in Sacramento at a certain hour next day to meet an adjuster, and Trainor, after a telephonic conversation with the general adjuster of the Royal Insurance Company in San Francisco, gave to Spurlock a slip of paper with the words, "Meet Mr. B. W. McKay, at eleven o'clock, at the Hupmobile Garage, Sacramento," written thereon. The evidence does not disclose that Spurlock ever knew or even saw this B. W. McKay, until he went to Sacramento in obedience to the suggestions and directions of Trainor. At the appointed time McKay proceeded to examine the repaired automobile and he also examined the bill of charges. Spurlock then paid for his part of the garage bill and McKay directed the plaintiff to deliver the machine to Spurlock, and stated that he, McKay, would have the insurance company pay to plaintiff the bill for the repairs that became necessary on account of the theft. The automobile was by the plaintiff delivered to the possession of McKay, who drove it out of plaintiff's garage and delivered it into the hands of Spurlock.

For some reason not made to appear the insurance company a few days later sent to Spurlock a check to pay for the damage this machine suffered. The check sent Spurlock was in the exact sum agreed by McKay as the amount the insurance company should pay to plaintiff. Spurlock cashed this check and gave to McKay a check on a Suisun bank signed by appellant, which McKay cashed and thereafter left for parts unknown. Plaintiff's bill remains unpaid, and this action was instituted to compel payment. The appellant Royal Insurance Company now maintains that it is not liable for the bill of plaintiff. It contends that McKay had no right or authority to make any promises on the part of the company. That there is no legal proof in the record that McKay was an agent of the company. That they paid the amount of this bill to the party who held their policy, and they have the returned check showing that Spurlock received the money. Appellant Spurlock contends that he was relieved from the obligation because the Royal Insurance Company were substituted as debtors to the plaintiff when McKay made the promise that the insurance company would send plaintiff a check for the repair bill.

Plaintiff contends he is entitled to payment of the bill from both defendants. Plaintiff had judgment in the lower court, from which both defendants appeal. While the contentions of appellants are somewhat to cross-purposes, yet they make common cause against the plaintiff, filing a joint brief herein.

The only error claimed by appellant Royal Insurance Company is "that the court committed prejudicial error in admitting numerous declarations of Mr. McKay, from which the court concluded he was authorized to and did enter into the agreement with Mr. Forrest above mentioned." If the trial court did conclude, solely from the declarations of McKay, that he was such agent and had such authority, unquestionably there was error. We cannot hold that the court did determine the question as to agency from the testimony of McKay. There was in the record much testimony from other sources that clearly indicated that McKay was an adjuster of this company. Spurlock was given the name of McKay as the adjuster for the company by Trainor, who was the agent through whom Spurlock effected this insurance. The general adjuster of the company, one Rea, gave to Trainor the name of this man McKay as adjuster. The check of the insurance company sent Spurlock was strangely made out in the exact sum McKay fixed as the amount the company should pay. Upon the taking of the evidence some witnesses testified as to what McKay said during the transactions at the time of adjustment as to being an agent of the company, but we think it clearly appears that the trial court was not at all impressed with that testimony. At the very outset of the testimony the judge of the trial court, speaking of this matter, said: "As to telling anything that Mr. McKay told him as to the repairs to be done, and that the Royal Insurance Company would pay for them he could testify to that, subject, of course, to a showing later on that Mr. McKay had the authority to make that statement."

Again, on this same subject, the court said: "his statement that he was the agent is not the proof of agency."

In addition to what has been said above, one witness testified directly that Spurlock, a co-defendant, introduced McKay to plaintiff as an adjuster for the Royal Insurance Company.

In California Jurisprudence, volume 2, page 1020, it is said: "The admission of improper evidence is harmless where the fact thereby sought to be shown is otherwise fully and properly established by evidence which is unobjectionable." A long line of California cases support this text. In *McGowan* v. *Burg Bros.*, 59 Cal. App. 223 [210 Pac. 545], it was held that the testimony of the alleged agent as to his agency was harmless when the fact was proven otherwise.

As to the authority of McKay to make a promise for and on behalf of the insurance company that they would pay this bill, we are of the opinion that he had the power to make any and all promises or arrangements, to the end that the bill be paid, and as to how it should be paid. McKay was sent there, as the evidence shows, after the company received a request from their agent Trainor to send him. Their agent told Spurlock to be at the garage of plaintiff to meet an adjuster. Spurlock, as well as plaintiff, was interested in the adjustment of the claim for repairs. The promise of McKay that he would have the insurance company send plaintiff a check was the only logical thing that could be expected of McKay after adjusting the amount of the claim. It will be again noted that the company sent Spurlock a check for the exact amount McKay fixed as the amount the company should pay. In other words, they fully ratified every act of McKay, unless it be as to his promise that the check would be mailed to plaintiff. There was no testimony on the part of the defendant company that McKay did not have the authority he claimed. In *Lancashire Ins. Co.* v. *Barnard*, 111 Fed. 702, as to the authority of an adjuster, the court said: "An adjuster is empowered to settle the alleged loss. A settlement of the loss necessarily involves the exercise of the option to pay the damages sustained or to rebuild or repair the building injured. The whole is always greater than and includes all its parts, and the authority to settle a loss includes the power to do any lawful act and to make any legal contract to fix the amount of and to discharge the liability. An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it shall be paid. . . . "

We therefore are of the opinion that plaintiff was justified in delivering the car to McKay upon his promise that the company would mail to plaintiff a check covering the amount sued for.

█ Appellant Spurlock claims there was a novation. His contention is that the plaintiff herein released him from the payment of this bill, and agreed to substitute in his place as the debtor the defendant company. Section 1530 of the Civil Code defines novation as follows: "Novation is the substitution of a new obligation for an existing one." Section 1531 of the Civil Code defines the manner in which novation is accomplished. In subdivision 2 of that section it is clearly stated that to accomplish a novation there must be the "intent" to release the old debtor. We cannot conclude that because the plaintiff permitted McKay to take possession of the car after its repair, upon his promise that the company would mail plaintiff a check, shows an intent to release Spurlock. Novation is proven by showing a meeting of the minds of the parties to the contract. The positive testimony of plaintiff is that he did not consent to a release of Spurlock, nor intend his release. "Whether a new agreement amounts to a novation is always a question of intention; and intention on the part of all parties that such agreement should constitute a novation must clearly appear." (20 Cal. Jur., p. 249.)

"Novation is made by contract, and is subject to all the rules concerning contracts in general. (Civ. Code, sec. 1532.) As in the case of other contracts there must be competent parties and a mutuality of consent between them." (20 Cal. Jur., p. 247.)

The trial court decided this point on the testimony before it, and that testimony was to the effect that plaintiff never agreed to nor intended any release of any claim as against Spurlock.

We therefore conclude that the trial court was not in error in holding, as it did, upon this point.

There being no error of a prejudicial nature in the record, the judgment of the lower court is affirmed.

Hart, J., and Finch, P. J., concurred.