[Civ. No. 4936.   Third Appellate District.—December 26, 1933.]

I. H. REUTER, Respondent, v. JACK R. HILL, Appellant.

G. P. Ross, George A. Work and W. B. Smith for Appellant.

David E. Peckinpah and Bert M. Green for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $7,500 which was rendered against him pursuant to a verdict returned by a jury in a suit for personal injuries sustained as a result of slipping and falling on a recently waxed stairway.

A reversal of the judgment is sought on the grounds that the evidence fails to show negligence on the part of the defendant, and upon the contrary that the record establishes the fact that the accident occurred as the result of the contributory negligence of the plaintiff. It is also asserted the court erred in giving to the jury certain instructions, and that the judgment is excessive.

The defendant is the owner of an office building in the city of Merced. The plaintiff was an active, vigorous realtor in the prime of life, who for several years had rented and occupied an office on the second floor of this building.

There was no elevator in the building. Access to the upper floor was by means of a well-lighted stairway, consisting of two flights of steps divided by a platform landing and an abrupt turn in the course of the stairway. The stairway is normal in every respect. The first flight above the ground floor contains eighteen steps. At this point there is a landing platform, with an abrupt turn of the stairway to the left paralleling the course of the lower flight to the second floor of the building. The width of the stairway is six feet. The elevation of each step is normal. The treads are covered with brown linoleum and bound along the edge with a metal strip. A hand-rail extends along the wall on either side of the stairway except around the side of the platform landing. It was the custom of the janitor to wax the steps and floors each Saturday or Sunday by applying a combination of liquid and solid wax which was distributed by hand over the surface with a cloth. Sometimes the wax was not equally distributed, but was left in blotches. Occasionally the steps and floors were found to be slippery after the application of the wax. Two of the witnesses testified they had previously slipped on the wax. It does not appear their experience in that regard was serious, or that the plaintiff had knowledge of that fact. Upon one previous occasion the plaintiff had observed that the stairs were excessively waxed. He said in that regard: "Had you ever seen oil on the steps before the 8th day of May? A. Yes, I had seen the steps . . . oiled before in a similar manner, but not quite so heavy as it was on this particular day. Q. Did you complain about it? A. I believe that I spoke to the janitor once or twice before."

On May 8, 1930, the plaintiff used the stairway early in the morning, going to and coming from his office, without observing any excess wax upon the steps or floor. In returning to his office in the afternoon, he reached the landing midway up the flight of stairs without noticing an excess of wax or a dangerous condition of the steps. Being an active man, it was his custom to ascend the stairs two steps at a time. Sometimes he used the railing as a guide or support. Upon reaching the landing upon this occasion, and turning to the left he placed his left foot upon the first step of the upper flight of stairs near the middle thereof and raised

his right foot to the third step, at the same time reaching for the hand-rail. When he placed his weight upon the right foot it slipped from under him and he fell, spraining his right ankle and wrenching his back. Regarding the accident, the plaintiff testified: ''I was going up the stairway to my office. I had passed the first flight of stairs and was on the platform going to the second flight to the upper floor, and I placed my left foot on the first step and I had raised my right foot to take the third step and about the center of the step my foot slipped as I was about to raise, . . . and reached for the railing . . . and my foot slipped across on this oil and swung me to my left and over-balanced me, and I had the heel of my right foot caught under this edge of the step and it threw me back to the left and in catching myself, wrenched my back and I landed back on the platform.''

Regarding the wax which covered the linoleum on the stairway, he further said: ''Q. You said that you observed an excessive quantity of oil or other substance on the stairway where you slipped? A. I did, . . . *after I had slipped.* Q. What was the color of the substance? A. It was really colorless, naturally the color of the linoleum. . . . Q. You were not aware of that condition? A. I was not. Q. Had you been up those steps before that day? A. I had been up the steps that morning. . . . Q. Did you notice anything wrong with them when you came down? A. I did not. . . . I noticed (the excessive oil or wax, only) after I had slipped and fell. I looked at it after I slipped and fell back to the platform; the platform and stairway were all heavily oiled and I noticed it was excessive *and more than the usual quantity on the step that I slipped on.* . . . And the steps were all heavily covered with oil. . . . Q. Did you touch the rail? A. I did not. Q. Did you reach for it? A. Yes, . . . Q. But you did not get hold of the rail? A. No, sir, I did not. . . . Q. Had you ever seen oil on the steps before the 8th day of May? A. Yes, I had seen the steps, I had seen them oiled before in a similar manner, but not quite so heavy as it was on this particular day. Q. Did you complain about it? A. I believe that I spoke to the janitor once or twice before (and he said) they would overcome it.''

The evidence of the presence of an excess amount of wax on the step upon which the plaintiff slipped on that occasion

is corroborated by a disinterested stenographer who worked upstairs, and observed the stairway after the accident occurred. Nell Loomis testified in that regard: "Now are those the stairs that you examined when you went down immediately after Mr. Reuter came into the office [after the accident occurred]? A. Yes, sir. Q. Just describe to the jury what you found down there, if anything, on those stairs. A. There was a mark in the oil over towards the edge of the stairway. Q. Do you recall what stair it was, or are you sure about that? A. It was near the bottom flight, I think it was the second, third or fourth. . . . Q. There was a mark . . . ? A. Well, the sort of a mark that a foot would make if it slipped in the damp oil substance. Q. Did you see any damp oil substance? A. Yes sir. Q. Describe that to the jury. A. Well, apparently it was a liquid of some sort that had been put on the steps; it wasn't very much more in evidence over towards the edge of the stairs than it was in the center of the stairs. . . . It was in spots. Q. Well, if you can, describe to the jury what you mean by 'spots'. A. Well, if anyone would have put wax on the floor or oiled the floor, you know, unless it is rubbed around even, it will be uneven blotches; you can see it thicker in some places. Q. You can see it thicker in some places than it was in others? A. Yes sir. Q. Did it have the appearance of having been rubbed in thoroughly or otherwise? A. No sir. Q. It did not have that appearance? A. No sir."

The record discloses a decided conflict of evidence regarding the alleged negligence of the defendant. ■ As a lessee of the office in the defendant's building, in consideration of the payment of rent, since the owner retained the obligation to keep the stairway leading thereto in proper condition, the plaintiff was an invitee in his use of the stairway for the necessary purpose of going to and from his place of business. (45 C. J. 821, sec. 230; *Chafor* v. *City of Long Beach*, 174 Cal. 478 [163 Pac. 670, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685].) The owner of the building owed to the lessee the duty of exercising ordinary care to keep the stairway in a reasonably safe condition. (19 Cal. Jur. 618, sec. 53; 20 R. C. L. 55, sec. 51; 45 C. J. 823, sec. 235; *Powers* v. *Raymond*, 197 Cal. 126 [239 Pac. 1069].) ■ There is substantial evidence, heretofore quoted, from

which the jury was warranted in finding that the janitor, who was the defendant's agent, was careless in failing to properly distribute the wax on the surface of the linoleum covering the stairs, and upon the contrary that the wax was left in comparatively thick spots or blotches which caused him to slip and fall. It was transparent and not readily seen without close examination. This is sufficient to support the implied finding that the defendant was negligent in failing to exercise ordinary care to keep the stairway reasonably safe.

The most serious problem in the present case, and one which presents a very close question of fact, is the charge that the plaintiff was guilty of contributory negligence in failing to see the presence of excessive wax of which he complains, and in failing to grasp the hand-rail at the side of the stairway as a support, and in attempting to ascend the stairway two steps at a time. In support of his charge of contributory negligence, the appellant has filed an excellent brief thoroughly reviewing numerous similar cases in this and other jurisdictions wherein the complainants were denied judgments on account of contributory negligence. It would be an arduous and useless task to distinguish these cases, since the existence of contributory negligence usually depends upon the specific facts of each particular case. It is sufficient to say that no case has been cited which depended upon facts and circumstances like those of the present action. The most favorable case upon which the appellant relies is *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 Pac. 76, 77]. In that case, a judgment for the plaintiff was reversed upon the ground that a private nurse who was employed by a patient occupying a room in the Sutter Hospital at Sacramento, and who, in the performance of her duties, slipped upon a recently waxed floor and injured herself, was guilty of contributory negligence in acting suddenly and thoughtlessly with previous knowledge of the existence of a dangerously slippery floor. The court there said in that regard:

"It is clear from the plaintiff's testimony that she had full knowledge of the condition of the floor during all the afternoon of September 28th and for two hours in the forenoon of the next day [upon which she fell and received her injury]. It does not appear that the defendant's knowledge

thereof was superior to that of the plaintiff. If it was negligence for the defendant to maintain the floor in the condition described by the plaintiff, there appears to be no escape from the conclusion that it was negligence for the plaintiff, *with full knowledge of such condition,* to continue in the use thereof.''

In the present case the plaintiff claims he had not observed that the stairs were excessively waxed or dangerous on the occasion of the accident and he had not noticed, until after his fall, that the wax was unequally distributed on the step upon which he slipped. It does appear that the wax lay in spots or blotches on that step, and that it was transparent and not easily observable over the brown linoleum. It is true that the plaintiff had previously used the stairway once before on that day without discovering an excess of wax, and that at the time of the accident he had actually passed eighteen steps without seeing an excess of wax. The jury, however, may have reasonably assumed the excess wax was not discovered because the substance was transparent and therefore not easily seen, or that it was not excessively used on the lower flight of steps and upon the contrary that it was unevenly distributed and lay in blotches only on the one step upon which he slipped and fell. These were matters of fact for the determination of the jury. The jury may have reasonably assumed the plaintiff had no previous knowledge of the slippery and dangerous condition of the stairway and as a reasonably prudent person he was warranted in assuming the janitor would keep his promise to see that it was not again unevenly or excessively waxed. In that regard, the present case may be distinguished from the Sutter Hospital case above cited. It is true that the plaintiff had complained of the presence of excessive wax on one previous occasion, but the janitor assured him he would take care of that condition. Under these circumstances we are of the opinion the question regarding the plaintiff's previous knowledge of the presence of excessive wax and a dangerous condition of the stairs was a problem for the determination of the jury, the solution of which may not be disturbed on appeal.

The plaintiff failed to grasp the hand-rail for support before he slipped on the step. We may not say, as a matter of law, that one is guilty of contributory negligence

under any and all circumstances merely because he fails to use the hand-rail in ascending a stairway. If the stairs were known to be covered with a slippery coating of wax, or with ice, or if the stairway were obscured by darkness, it might constitute negligence to attempt to ascend them without holding to the railing. Under the circumstances of this case, we are of the opinion it was a question of fact to be determined by the jury as to whether the plaintiff was guilty of negligence in failing to use the railing.

■ A more serious question is whether the plaintiff was guilty of contributory negligence in taking two steps at a time without clinging to the railing. We are of the opinion this also depends upon the circumstances of the particular case. We may not hold, as a matter of law, that when a man is long-legged, able-bodied, active and vigorous, that it is negligence *per se* for him to take two steps at a time in ascending a stairway when the steps are uniform, normal and well lighted so that he can plainly see what he is doing. Again, we may suggest that if one is using a stairway in the darkness, which is irregularly constructed and out of repair, or known to be covered with ice or slippery wax, it would probably constitute negligence for one to attempt to ascend it two steps at a time without clinging to the railing. Under the circumstances of this case, however, we are of the opinion the implied finding of the jury to the effect that the plaintiff was not guilty of contributory negligence in using the stairway as he did may not be disturbed on appeal.

■ It is asserted the court erred in giving to the jury at the request of the plaintiff the following formula instruction:

"If you find that the plaintiff in this case was a tenant in the building of the defendant and while using the stairs in said building in the ordinary manner slipped and fell by reason of the fact that the defendant or his agents, or servants negligently placed a quantity of oil or other substance on said stairs and by reason of the fall injured himself, then you must find in favor of the plaintiff and against the defendant."

Formula instructions which purport to recite the facts of a case and direct the finding of a verdict in accordance therewith, but which omit essential elements constituting

a complete defense to the action, have been repeatedly criticised by the courts. Occasionally such instructions have been held to be fatally erroneous. In the present case the challenged instruction above quoted omits reference to the question of the alleged contributory negligence of the plaintiff. The jury was, however, elsewhere clearly instructed regarding the doctrine of contributory negligence, as follows:

"It is a well-settled rule of law that if the negligence of plaintiff contributed proximately to the injury of which the plaintiff complains, he cannot recover. And if you so find from the evidence, then your verdict must be against the plaintiff and in favor of the defendant. Contributory negligence is the want of ordinary care and prudence on the part of the person injured contributing directly and proximately to the injury."

In view of the clear and correct instructions which were given to the jury in this case upon the subject of contributory negligence, we are unable to say that the jury was misled by the foregoing challenged one, since, as the Supreme Court has recently said in the case of *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237], and in *Barham* v. *Widing*, 210 Cal. 206, 216 [291 Pac. 173], wherein similar instructions were discussed, it may be reasonably assumed the jury understood the challenged instruction to declare merely the legal principle that liability to the owner of a building attaches to him for the negligent acts of his agent or janitor. In other words, it does not purport to contain a recitation of all the essential facts of the case upon which a judgment may depend. In effect it declares that "If you find that the plaintiff was a tenant who was injured while he was actually using the stairway of the lessor's building in the ordinary (reasonable) manner, and that he slipped and fell as the result of the owner's agent or servant negligently placing upon the steps a quantity of oil or other substance, you should find a verdict in favor of the plaintiff for the reason that the owner of a building is liable for the negligent acts of his servant performed in the regular course of his employment." It is true the instruction may be otherwise construed. But that construction should be adopted which will support the judgment if it is reasonably susceptible of such interpretation. There is a disposition to

relax the rigid application of the rule regarding formula instructions which is announced in *Beyerle* v. *Clift*, 59 Cal. App. 7 [209 Pac. 1015], and other similar cases since the adoption of article VI, section 4½, of the Constitution, when the record fails to show a miscarriage of justice. We therefore think the challenged instruction does not constitute reversible error.

■ The following instruction which was given to the jury at the request of the plaintiff is also assigned as erroneous:

"You are instructed that the keeper of a public building or place of business is bound to keep his premises and stairs to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises."

It is true that the owner of a building is not *bound* to keep the stairway leading to rented offices therein absolutely safe from danger. The owner is not an insurer against accidents. It is only necessary that he should exercise ordinary care to keep the stairway reasonably safe for the customary use thereof. While the preceding instruction is carelessly drawn, we are inclined to think the jury was not misled by its language. Read as a whole, it is reasonably susceptible of the construction that the owner of the building is bound to use *"ordinary care* to avoid accident or injury" to persons entitled to use the stairway, and for that purpose must "keep his premises and stairs in a (reasonably) safe condition". The language which is used to the effect that the owner "is *bound* to keep" the premises safe, may be fairly interpreted to mean merely that it is his duty to keep them reasonably safe, since the final sentence of this instruction says "he must use *ordinary care* to avoid accidents". Construed in this manner, we are of the opinion the giving of this instruction does not constitute reversible error. Even though it be deemed to be erroneous, it is not reversible error in view of the constitutional provision above cited.

■ Finally, it is insisted the judgment of $7,500 which was rendered against the defendant is excessive, since the plaintiff was not permanently nor seriously injured.

We are of the opinion there is substantial evidence to support the amount for which the judgment was rendered

and that it is therefore not excessive. If the extreme pain which was suffered by the plaintiff for several months, the loss of time, income and hospital expenses, together with the cost of drugs and medical care, were incurred as a result of the injuries sustained from the fall on the waxed stairs, then the sum of $7,500 is not excessive. If, upon the contrary, that pain and expense resulted from a chronic arthritis and not from the fractured ankle or wrenched spine, then he is not entitled to any damages whatever.

There is evidence to support the plaintiff's claim that he, at first, supposed his ankle was merely sprained and not really fractured. The displacement of the vertebrae and the extreme pain from that source apparently developed gradually, and increased during a period of three or four months. The plaintiff did not consult a physician for several days after the accident occurred. He bandaged his foot and limped about, but was unable to visit his office. When he first consulted Doctor Lilley three or four days after the accident occurred, both he and the doctor apparently attributed the pain in his ankle and spine to another cause. The doctor treated him for arthritis. No X-ray pictures were then taken. After the lapse of three months, and the pain in his ankle and spine increased, he consulted another physician. X-ray pictures were taken by Doctor Ethan H. Smith, a reputable physician of San Francisco, who is a graduate of both the Bellevue Medical College of New York and the University of Berlin. He diagnosed the case as a compound fracture of the ankle and a serious wrenching of the spine caused by the fall. The plaintiff's foot was placed in a plaster cast, and he went about on crutches for several weeks. Doctor Smith testified that an improper knitting of the bones of the ankle had caused a permanent injury to the foot which would always impair his ability to walk and that any unusual strain upon the foot would cause him pain. There is, therefore, evidence that the injury to the foot is permanent. X-ray pictures were introduced in evidence. Lines were pointed out on these pictures which the doctor said indicated a fracture of the "lower end of the fibula". The doctor positively asserted there was no evidence of arthritis. Upon the contrary, Dr. Bennett, a reputable physician of Fresno who made a detailed examination of the plaintiff in September,

1931, also procured X-ray pictures to be taken of both the ankle and the spine. He testified positively there was neither a fracture of the ankle nor an injury to the spine. He asserted that the plaintiff was suffering from a clear case of arthritis in both the ankle and the spine. He affirmed that the pictures which Dr. Smith had taken indicated that fact.

There is substantial evidence corroborating the theory that the plaintiff's ankle was fractured by the fall, or at least that it was seriously injured at that very time. Mrs. Loomis, who is a stenographer employed in a law office in the Hill building where the plaintiff and her employer shared a common reception room, testified that prior to the day upon which the accident occurred, the plaintiff walked naturally and did not limp, but that immediately after the accident happened he came limping into the office and that "he was hopping on one foot and occasionally just put the tip of his toe and his other foot to the floor when he would try to step".

In view of the conflict in evidence, it became a problem for the jury to determine whether the plaintiff was suffering from a broken ankle and a wrenched spine, or whether he was afflicted with arthritis only. For this reason, on appeal, we must assume he did sustain a broken ankle and a wrenched spine as a result of the accident, and that the amount of the judgment is therefore not excessive.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 21, 1934.

Shenk, J., and Thompson, J., dissented.