## BOOTH v COLDIRON

Ohio Appeals, 4th Dist, Scioto Co

Decided March 11, 1936

Laurence M. Kimble, Portsmouth, for plaintiff in error.

W. W. Weidner, Portsmouth, and Bannon & Bannon, Portsmouth, for defendant.

## OPINION

By MIDDLETON, PJ.

It appears from the record that on January 25, 1932, C. W. Booth was driving a Ford automobile in an easterly direction upon state route No. 140 approximately one mile east of Slocum, Ohio; that while said car was being so driven it struck Virgil Coldiron and severely injured the boy who was then between seven and eight years of age. His father, Roy Coldiron, as the boy's next friend, instituted this action for damages sustained by the boy and by the verdict of a jury recovered damages in the sum of $4,900.

While the petition in error contains vari-ous assignments of error we conclude that for the purpose of the disposition of said petition in error it will only be necessary to discuss in detail three assignments therein contained.

The bill of exceptions discloses that on the day after the accident a man by the name of H. D. Bercaw called on the father and procured from him an alleged statement of the circumstances surrounding the accident, which statement was signed by the father and in which it was stated by the father that at the time of the accident he judged the car was traveling "about forty-five miles per hour." This statement of the father was not in harmony with his direct testimony to the jury on his examination in chief. In his cross-examination counsel for Booth inquired of him as follows:

"Q. (Referring to paper, defendant's exhibit No. 1). Didn't you make a statement in this case? A. I would like to see that paper.

Q. (Hands witness paper, defendant's exhibit No. 1). Is that your signature? A. Yes.

Q. You signed the statement, didn't you? A. Yes.

Q. And that statement was taken by a man by the name of Bercaw, wasn't it? A. I couldn't tell. I don't know his name.

Q. He talked that thing over with you at the time, didn't he? A. Yes, we had a talk about it.

Q. He wrote down the things you told him about? A. Yes.

Q. And you read it? A. No, I did not read it.

Q. You knew what was down on there? A. I knew what I told him.

Q. And you did not read it? A. No.

Q. And you knew what was in the statement when you signed it? A. (No answer).

Q. You would not have signed it if you had not known? A. (No answer).

Q. You would not sign a statement not knowing what was in it? A. I know what I told him was all I know. I never read it.

Q. He read it over to you? A. He could have.

Q. You know. You were right there. Didn't he read it over to you? A. I say he read it over to me.

Q. And you signed it? A. Yes.

Q. Doesn't that statement read as follows (reads paper, defendant's exhibit No. 1): '45 miles per hour'? A. I never told him anything about 45 miles an hour.

Q. That is in the statement you signed?
A. Yes.

Q. And you knew what was in the statement? A. Yes.

Q. And you signed it? A. (No answer).

Q. You just testified that was your signature? A. Yes."

Then followed a number of interrogatories by counsel for Booth referring to the contents of and the statements in the written statement and whether the winess had made such statements. In this inquiry the major part of the statement was submitted to the witness. The witness was then inquired of by his counsel on redirect examination as follows:

"Q. Who wrote that and asked you to sign it? A. I don't know. I can't hardly speak that name. That insurance man.

Q. What? A. That insurance man.

Q. What insurance man?" Defendant's objection and motion to strike out overruled. Defendant's exceptions.

"Q. Tell what man it was that asked you to sign it?—A. Bercaw.

Q. Who was he and what was he doing? A. Well, he was suposed to have been an insurance man." Defendant's objection and motion to strike out overruled. Defendant's exceptions.

"Q. Fire insurance? A. No." ▪Defendant's objection and motion to strike out overruled. Defendant's exceptions.

"Q. Where did you meet him? A. Ern Litteral's.

Q. When? A. After the accident.

Q. What was he doing there? A. Well, he was supposed to come out there to see me.

Q. Well, did he tell you who he represented? A. Yes.

Q. Who did he say he represented? A. Insurance company." By Mr. Kimble. Objections and motions to strike and exceptions on all of this.

"Q. Did he tell you he represented Mr. Booth? A. Yes. He was in the insurance company—Booth.

Q. Is that what he told you? A. Yes, that he was representing Booth in the insurance company."

In considering the competency of this evidence it must be remembered that this testimony was admitted after the witness had been cross-examined on the contents of the written statement and the same had been read in full to him in the presence of the jury. Its contents had been fully presented to the jury and later it was offered in evidence by the defendant. The man who prepared the written statement and was connected with the taking and making of the statement later was called as a witness in the case and was permitted to testify in support of the written statement. The defendant therefore brought into the case this statement and the man who admittedly prepared the statement. Under these facts and surroundings the plaintiff had the right to question him in respect to who and what he was. The statement which this witness wrote and procured the father to sign went to vital and determinative facts in the case. Not only is that true but the jury had the duty to determine between the two what weight and effect it would give to their testimony as reflecting upon the question whether he was acting in behalf of some one who had a pecuniary interest in the result of the trial. This subject is discussed in 56 A.L.R. 1439, and in that discussion it is said:

"The rule is well established that facts tending to show interest, bias, or motive on the part of a witness may be elicited on cross-examination, although such examination may necessarily disclose that the defendant in a personal injury action is protected by insurance."

In the case of Scott v Steece, decided by the Court of Appeals for Jackson County, a physician was called to testify in respect to the injuries of the plaintiff Steece, it appearing that the physician had made, a short time prior to the trial, an examination of Steece for that purpose. On the cross-examination of this physician he was asked by counsel for the plaintiff:

"Q. Who asked you to examine Mr. Steece? A. Mr. DeLay.

Q. Have you been paid for that work yet? A. First examination." Mr. DeLay objected to the last question. Objection overruled.

"Q. Who paid you? A. The Buckeye Casualty Company."

On a review of the case in this court this testimony was held to be competent. A motion to certify this case was overruled by the Supreme Court.

48

It is our conclusion that the testimony under discussion was competent for the purpose of showing the connection of Bercaw with the case.

Another complaint in the petition in error is that the trial court erred in permitting a claim for special damages to remain in the petition, which claim was in the petition when it with other pleadings were submitted by the court to the jury for its consideration. The special damages pleaded were for the expense of physicians, hospital and nursing. The record shows that a motion was directed to these averments in the petition demanding that they be stricken from the pleading, which motion was overruled. It is undoubtedly the law that such claims had no place in the petition but we have not found any evidence in the record to show that these offensive items were ever directly called to the attention of the jury for any evidentiary purpose. It is contended that inasmuch as the averments were permitted to remain in the petition and the jury was permitted to have the pleading in its consideration of the case they might have read the same and been influenced thereby in fixing the amount of damages to be awarded. We are not impressed with this contention in view of what the court said to the jury in its charge on this matter. We quote that part of the charge in full:

"No recovery can be had in this case for or on account of doctor bills or hospital bills or other expenses which may have been caused by the injuries to the plaintiff. This question of these bills is not involved in this case and you must not consider the question for any purpose whatever."

The closing direction of this charge in our opinion definitely took this offensive matter from the record.

We come now to the consideration of the complaint of the plaintiff in error to an alleged error in the general charge to the jury which appears on page 167 of the bill of exceptions. This alleged error consists of a single sentence in the charge as follows:

"It was prima facie unlawful, and therefore prima facie negligent, for the defendant to drive or operate his automobile at a speed greater than forty-five miles an hour."

This instruction is found in a long charge of the court immediately preceding and following it. Prior to the giving of the charge in question to the jury the court had read the pertinent provisions in §§12603 and 12603-1 GC, and had correctly explained to the jury the interpretation of those sections, and then immediately following the particular complaint under consideration the court followed with this language:

"This means that if the evidence shows such speed in excess of forty-five miles an hour such proof gives rise to the inference or presumption that the same was negligent."

The court then immediately follows with an exception to what he had said to the jury in which he stated that it could find from a consideration of all the circumstances and conditions surrounding the defendant at the time of the accident, including the width and surface of the road, such rate of speed was not unlawful. We conclude that the charge as a whole gave to the jury a correct interpretation of the law and that it at times was more favorable to the defendant than was warranted by the facts. Among other things the court gave the following instruction to the jury in referring to the speed of forty-five miles an hour:

"* * * such speed in and of itself and standing alone is not sufficient and does not constitute negligence, but such speed may notwithstanding be taken into account and considered by the jury with all the other conditions then and there existing, namely the traffic, the width of the road, its surface condition, its use, and all other circumstances then existing as shown by the evidence, and in order to determine whether or not there was negligence on the part of the defendant in the operation of his automobile."

While we do not approve the one sentence in the charge complained of we can not conclude that the giving of this charge when considered in connection with the charge as a whole would justify a reversal of the judgment.

The judgment is affirmed.

Judgment affirmed.

BLOSSER and McCURDY, JJ, concur.