[Civ. No. 7069. Third Dist. Jan. 25, 1945.]

DON MULLANIX et al., Respondents, v. RISTO L. BASICH et al., Appellants.

Gerald M. Desmond and Gerald B. Wallace for Appellants.

J. Oscar Goldstein and Burton J. Goldstein for Respondents.

PEEK, J.—This is an appeal by defendants doing business under the name of Basich Bros., a partnership, from orders of the trial court denying its motion for judgment notwithstanding the verdict and for a new trial, and from the judgment entered by the court pursuant to the verdict of the jury.

The plaintiffs Don Mullanix and Julian C. Berry, by their joint complaint, alleged that about 3:30 o'clock a. m. on October, 26, 1942, a truck, owned by the defendant Ford and under hire to defendant Basich Bros., while being driven by one Zumwalt, who was then in the employ of both Ford and Basich Bros., ran off a street in the city of Chico, jumped the curb, demolished a motor court cabin owned by Berry and caused serious and permanent injuries to Mullanix, who was asleep in the cabin at the time. By their answers each defendant denied the employment of Zumwalt or that he was acting in the course and scope of any employment for either defendant.

Appellants rely mainly upon four points in urging a reversal of the orders and judgment of the trial court:

(1) That the court erred in the admission of certain testimony (a) by police officers who talked with Zumwalt shortly after the accident and (b) by foremen for both Ford and Basich Bros. in relation to the operation and control of the truck at the time of the accident; (2) that the court erred in refusing to give certain instructions proposed by Basich Bros.; (3) that prejudicial error, which was not cured by the admonition of the court, resulted from plaintiffs' counsel injecting into the case the question of liability insurance, and that the verdict of the jury against Basich Bros. alone and in favor of defendant Ford was the result of such error; and (4) that the amount of the verdict was excessive and also the result of passion and prejudice on the part of the jury against the defendant Basich Bros.

An examination of the record discloses that all parties apparently concede the driver Zumwalt to have been negligent. It, therefore, would appear that appellants' first charge that the testimony of Police Officers Hughes and Swift was hearsay, is without merit. Particularly is this true in view of the testimony of Zumwalt himself to the same effect.

The testimony involved in the remaining portion of appellants' first contention is as follows:

James Roberts, the foreman for defendant Ford, was called as a witness for plaintiffs and permitted to testify over appellants' objection that at the request of one Gerald Stahl (foreman for Basich Bros.) Zumwalt was sent with the truck from the city of Marysville to the Vina Airport near the city of Chico where appellants were engaged in construction work for the United States Government. Roberts further testified that this was done with the understanding that Zumwalt's wages would be paid by Basich Bros. from the time he left Marysville for the airport until his return with the truck to Marysville at the conclusion of the work. On cross-examination counsel for defendant Ford elicited from Roberts testimony, without objection from appellants, that Stahl previously had been employed by Ford; that he left such employment and entered the employ of Basich Bros. as foreman; that about ten days prior to the accident Stahl came to Marysville in his capacity as foreman for appellants in an attempt to get trucks for the construction work at the airport; that he knew all of the drivers personally, as they had worked

under both him and Roberts; that he named those whom he wanted (including Zumwalt) to be sent with trucks to the airport; that when he asked Stahl who would pay the drivers Stahl replied that Basich Bros. were carrying the payroll and would pay the drivers starting with their departure from Marysville and continuing until their return.

It is urged by appellants that the court should have excluded such testimony as hearsay, in that there was no evidence that Stahl was authorized to make any such statement or to otherwise bind Basich Bros. However, the record reveals that prior to the time the testimony in question was introduced the defendants Ford, Zumwalt and a Mr. Estep, office manager for Basich Bros. had already testified. Ford stated he had agreed with a Mr. Wilcox, general superintendent at the airport for Basich Bros. to loan his (Ford's) trucks to the latter at a stipulated sum per hour plus a certain percentage of the profits; that the drivers were to be, and actually were, paid by Basich Bros. from the time they left Marysville; that the drivers were carried by Basich Bros. on its books and were controlled by them until they were finally discharged. Mr. Estep testified as did Ford and Zumwalt that at no time was Ford or any representative of his on the airport job after October 25th, the day before the accident; that the drivers were directed and controlled by Stahl, foreman for Basich Bros. and that Stahl was the one who put Zumwalt on the Basich Bros. payroll.

In view of the testimony of Ford, Zumwalt and Estep there was sufficient testimony from sources other than Roberts to support the implied finding of the jury that Zumwalt was in the employ of appellants. In the case of *Forrest* v. *Royal Ins. Co.* (1927), 88 Cal.App. 88 [262 P. 820], wherein it was claimed that the trial court committed prejudicial error in the admission of declarations of an employee of the defendant therein, this court stated: ''The admission of improper evidence is harmless where the fact thereby sought to be shown is otherwise fully and properly established by evidence which is unobjectionable,'' citing 2 Cal.Jur. 1020 and *McGowan* v. *Burg Bros.* (1922), 59 Cal.App. 219 [210 P. 545]. See, also, *Roy* v. *Salisbury* (1942), 21 Cal.2d 176-187 [130 P.2d 706].

In order to justify a reversal of a judgment on the ground of the erroneous admission or rejection of evidence a reviewing court must be of the opinion that from an exami-

nation of the entire case, including the evidence questioned, that the error complained of has resulted in a miscarriage of justice. (Const., art. VI, §4½; *Coleman* v. *Farwell* (1929), 206 Cal. 740 [276 P. 335].)

 Appellants' second contention is that the trial court failed to give certain instructions proposed by it; that such instructions should have been given

". . . to inform the jury that defendant Zumwalt must have been found acting within the scope of employment by Basich Brothers at the very time of the accident, in order for said Basich Brothers to be liable for his negligence . . .; (Defendants' proposed instruction No. 1.)

". . . to instruct the jury that merely carrying the driver, defendant Zumwalt, on the payroll of defendants and appellants Basich Brothers, was not sufficient to charge said defendants and appellants with responsibility for said driver's negligent act . . . (Defendants' proposed instruction No. 2.)

". . . to place before the jurors the true tests of who was the responsible employer, to-wit: who had the power of control, the hiring, and the right to discharge. . . . (Defendants' proposed instruction No. 3,) and

". . . to inform the jury that if the evidence showed the defendant Ford had the right to hire and discharge the driver and to direct his movements in the operation of the truck, he was a general employer and thereby responsible for the driver's negligent acts." (Defendants' proposed instruction No. 4.)

It cannot be denied that each of defendants' said proposed instructions correctly stated the law and that if the court by its refusal to give them had thereby eliminated from consideration by the jury the points therein mentioned, such refusal would have amounted to reversible error. However, a review of the instructions given reveals that the court in an endeavor to include in one instruction all of the law set forth in the four proposed instructions adopted language of its own intended to accomplish the same purpose. It is quite possible that the wording used could have been more direct and less cumbersome; but as this court said in the recent case of *Inai* v. *Ede* (1943), 59 Cal.App.2d 549 [139 P.2d 76], if when the entire charge to the jury is examined in the light of a reasonable and fair construction it reasonably may be said as to the law applicable thereto, that is sufficient to

defeat a claim of error predicated upon a defect in a particular instruction. (*Henderson* v. *Los Angeles Traction Co.* (1907), 150 Cal. 689 [89 P. 976].) In accordance with the section of the Constitution previously cited, error of the nature charged by appellants cannot be deemed prejudicial.

The burden cast upon the party claiming error is not only to show it, but also to show that such error is sufficiently prejudicial to justify a reversal. (*Coleman* v. *Farwell, supra.*)

It is also well established that a reviewing court should adopt the construction and effect of an instruction which will support rather than defeat the judgment if it is reasonably susceptible of such interpretation. (*Reuter* v. *Hill* (1933), 136 Cal.App. 67 [28 P.2d 390].) The instruction given by the court being susceptible of such interpretation we therefore conclude that appellants' second contention is without merit.

The record shows in regard to appellants' third contention that on June 26, 1942, the defendants Ford and Basich Bros. entered into a written contract whereby Ford as a subcontractor agreed to perform certain trucking for Basich Bros. The contract was introduced in evidence without objection during the examination of Ford under section 2055 of the Code of Civil Procedure. Plaintiffs' counsel then read the agreement to the jury. Paragraph "G" thereof reads: "Second party [Ford] understands that hereunder he is required to furnish every type of insurance required by the original contract and/or specifications, including compensation, public liability, property damage and all others that may be required under the terms of the original contract had between the first party and the U. S. Engineers." Ford testified that upon completion of the written subcontract in September, 1942, he moved his men and equipment to Marysville for work at Camp Beale; that while his men and equipment were still at Camp Beale and prior to the date of the accident he made a new oral agreement by which his trucks were rented and his drivers were loaned to Basich Bros. for further work at the Vina Airport. Counsel for plaintiffs then inquired into the similarity or difference between the written subcontract and the later oral agreement, as follows:

"Q. While you had this contract [referring to the prior written and completed contract] did you pay all of your employees? A. Yes sir. . . .

"Q. And material and everything else? A. Yes sir.

"Q. Did you direct the work of your drivers? A. Yes sir.

"Q. And were you up on the Vina job at that time? A. Yes sir.

"Q. And all of these truck drivers, including Mr. Zumwalt, did you give them instructions or Mr. Roberts, your foreman? A. Both Mr. Roberts and myself gave instructions.

"Q. After you made this oral agreement that you told the jury you were hiring out the trucks for $2.44 an hour, did you have anything to do with the payroll? A. No.

"Q. Did you carry compensation insurance? A. No sir, I carried no insurance, not even on the trucks.

"Q. Did you pay any Social Security Insurance? A. No sir.

"Q. You had nothing whatever to do with the men working on the trucks? A. No sir."

The record discloses no objection was made to any of these questions nor was a motion made to strike the answers; therefore they will not be considered for the first time on appeal. It is well established that for a party to take advantage of alleged error in the admission of improper testimony, it is necessary that he object to its admission when it is offered. (*Kershaw* v. *Tilbury* (1932), 214 Cal. 679 [8 P.2d 109]; *Balkwill* v. *City of Stockton* (1942), 50 Cal.App.2d 661 [123 P.2d 596]; 11 So.Cal.L.Rev. 413.)

Even if timely objection had been made to the testimony now attacked, it properly should have been admitted. The admissibility of testimony depends on whether or not it tends to prove some issue in the case. The question at issue herein involved the relationship of master and servant. Such testimony therefore was relevant and material and defendants could not have had it excluded upon the ground that it tended to prejudice appellants' case because it tended to show that the partnership carried insurance. The general rule is stated as follows in 56 American Law Reports, page 1433:

"If the existence of the relation of master and servant is an issue in an action for damages for personal injuries by one claiming to be an employee of defendant, it is competent for the plaintiff to show that the defendant carries indemnity insurance on his employees, including the plaintiff, as that evidence is relevant to the issue of respondeat superior."

The first reference to liability insurance was made during

the cross-examination of the witness Ford by appellants' counsel. After the accident in question Ford, while in southern California, was invited to the office of the insurance carrier for appellants in Los Angeles for the purpose of making a statement concerning the accident and the relation between the driver of the truck and defendants. The statement was written in longhand by a representative of the insurance carrier and Ford signed it. During the trial Ford gave testimony at variance with information contained in his signed statement, and appellants' counsel sought to impeach him as follows:

"Q. And do you remember giving that statement? A. Yes. Q. And it was given in Los Angeles at your home, or your place of business? A. It was given up town at the *insurance company*. . . .

"Q. Why would you sign this statement in which you say, that during the month of October, 1942, 'I was operating a fleet of trucks near Chico, California, and contracting with Basich Bros. to haul sand and gravel to the Vina Airport, about fifteen miles from Chico.' Why would you make that statement if the fact was that you had simply loaned drivers to Basich and rented trucks to them. Can you explain that to the jury?

"A. Yes, I can, I believe. I told the story as near as possible of what happened at the Chico Airport to the *representative of this insurance company that made these papers out*, and he put it down in such a manner as to appear that I was contracting, rather than renting."

Upon redirect examination plaintiffs' counsel questioned the witness and the following occurred:

"Q. Mr. Ford, who do you say took this statement, or in whose handwriting is this statement? A. I don't know the gentleman's name.

"Q. Who was he? A. Basich Bros. insurance company.

"Q. Did you write one single word in that statement? A. No sir, nothing except my name."

Again it does not appear that any objection was made to said statements nor does it appear that any motion was made to strike the answers nor was any request made that the jury be admonished to disregard the references to insurance. We have already said herein that under such circumstances a reviewing court will not consider the objection when made for the first time on appeal. Furthermore, as appellants first

used the signed statement in an effort to impeach Ford's testimony and then put the statement in evidence, it was not improper for opposing counsel on redirect examination to question Ford about the circumstances under which the statement was written and signed in the interest of the party who procured the statement. The rule is thus stated in 70 Corpus Juris, p. 709, section 858:

"Where a witness in an action for injuries is cross-examined as to a written statement which he had made, it is not improper for the witness to be asked in whose behalf the one who procured the statement was acting and elicit the fact that he was acting for an insurance company, and, similarly, after cross-examination has shown that the witness made a statement to some one, it is not improper to ask to whom the statement was made and elicit the answer that it was made to an insurance man. It is proper on re-direct examination to bring out the circumstances surrounding a transaction or occurrence, or the making of a statement brought out on cross-examination."

See *Booth* v. *Coldiron* (1936), 55 Ohio App. 144 [9 N.E.2d 161]; *Long* v. *Crystal Refrigerator Co.* (1938), 134 Neb. 44 [277 N.W. 830].

In support of appellants' next contention it is charged that counsel for plaintiffs argued to the jury that appellants should be held liable as they were insured and that counsel for defendant Ford took advantage of such argument by stating to the jury that if they were to find against Ford he personally would have to meet the judgment.

An examination of the record in regard to this issue discloses that from the outset of his argument to the jury counsel for plaintiffs sought judgment against both defendants, stating: ". . . the only fair and just thing in this case, is to hold both of them responsible." Each of defendants' counsel, however, while admitting Zumwalt was the employee of one or the other, disclaimed all responsibility for his negligent acts and endeavored to place such responsibility upon the other. Ford's counsel stated that although plaintiffs' counsel might feel it fair to hold both defendants he felt that it would be decidedly "unfair"; that Zumwalt was "not in the employ of Ford"; that from all the circumstances it was an "inescapable conclusion that Basich Bros. and Basich Bros. alone, were employing Zumwalt . . . ," and in reiteration of a previous statement, said: "If a verdict is rendered in this case and there is a judgment against him, then he has got the worry of

having to do it all over again and all the other proceedings, and all the work and expenses incidental to that are. . . ." At that point he was interrupted by counsel for Basich Bros. who stated to the court: "I do not think that is proper argument. . . ." The Court: "No, I don't think so." Counsel for Basich Bros. likewise admitted the negligence of Zumwalt, and added: "I will state very frankly that I think he [Mullanix] is entitled to a verdict"; that the liability for plaintiffs' injuries and damages "rests with Mr. Ford and not with Basich Bros."

Plaintiffs' counsel in rebuttal argued:

"I don't say, 'don't you think it is fair to find them both liable, because you believe Basich Bros. liable. Absolutely not, and I say to your frankly that I would myself, if I were going to leave one of them out of the case, *as far as liability is concerned,* I would leave Ford out and retain the Basich Bros., *because the evidence is conclusive against Basich Bros.,* and it is a question of fact as far as Ford is concerned. . . . *I still think the evidence is sufficient to hold Ford also;* . . . he (Ford) equally along with Basich Bros., was an employer and that he equally, with Basich Bros., should be held liable. . . ."

"Now, on the face of that record, and when the court instructs you that it is for you to determine from the facts and circumstances, whether at the time and place in question, Mr. Zumwalt was in the employ of Basich Bros., your answer obviously must be, yes, because if you don't do that, Members of the Jury, *I fear that a judgment in this plaintiff's behalf would not be worth the paper it is written on, and I say this honestly and fairly.*"

Counsel for appellants then stated to the court:

"If your Honor please, we object to the making of that statement, and charge it as misconduct, and very prejudicial to the rights of the defendant in this case, whom I represent."

The court turned to plaintiffs' counsel and said:

"You have no right to refer to the responsibility or financial ability of the defendants."

Mr. Goldstein: "I don't say that."

Mr. Desmond: "You said the judgment would not be worth the paper it was written on, unless the Basich Bros. are held in this case."

Mr. Goldstein: "That is not what I meant."

Mr. Desmond: "I would like to have the jury instructed to ignore that statement."

The Court: "The jury will be instructed to disregard the statement."

Mr. Goldstein: "It is an error on my part, and it is a question of liability and not anything else."

The Court: "Proceed."

Mr. Goldstein, continuing: ". . . I would not ask you for a verdict against *both of the defendants,* unless the evidence sustained it, and the circumstances warranted it, and the evidence supported it . . . *I say as between Ford and Basich Bros., the evidence is overwhelming and conclusive, beyond any peradventure of a doubt, that the man was in the employ of Basich Bros."*

The foregoing concludes the argument of all three attorneys in which the alleged objectionable matter was mentioned and has been italicized (1) to show the endeavors of each defendant to shift the responsibility to the other; (2) that plaintiffs did not attempt to obtain a judgment solely agains Basich Bros. and (3) that the attacked language of plaintiffs' counsel was reasonably susceptible of the meaning attributed to it by him, i.e. that it was merely that the liability of Basich Bros. was inescapable.

The numerous cases cited by appellants in support of its contention do not appear to be in point with the facts presented in the present controversy. In each of the cases so cited the question of insurance arose either directly or indirectly through the activities of plaintiff's counsel therein. However, even if such were true of the facts here, a reversal would not necessarily follow unless a contrary holding would have "the effect of preventing the complaining party from having a fair trial. (*Robinson* v. *Western States Gas etc. Co.* (1920), 184 Cal. 401 [194 P. 39].) In other words, in order to justify a reversal, such misconduct, in our opinion, must constitute such an irregularity in the proceedings or conduct of the court, jury or adverse party as to materially affect the substantial rights of the party aggrieved." (*Schlenker* v. *Egloff* (1933), 133 Cal.App. 393, 399 [24 P.2d 224].)

 The record herein further discloses that a motion for a new trial was made by appellants and denied; that among the grounds urged in said motion were "irregularity in the proceedings of the court by which the defendants were prevented from having a fair trial" and "irregularity in the proceedings of the adverse party, plaintiffs and their counsel, and by co-defendant Ford and his counsel by which the defen-

dants were prevented from having a fair trial." Ordinarily, the denial by the trial court of a motion for a new trial wherein proceedings are attacked as being irregular and plaintiff is charged with misconduct for improperly injecting insurance into the case "the denial by the trial court of a motion for a new trial made on that ground will be deemed a determination by it of good faith on the part of counsel and that defendants were not prejudiced." (*Hatfield* v. *Levy Bros.* (1941), 18 Cal.2d 798, 814 [117 P.2d 841]; *Levens* v. *Stocco* (1935), 5 Cal.App.2d 693 [43 P.2d 357].) Although a denial of such a motion is not binding upon this court it is entitled to great weight upon appeal in which complaint is made of such alleged misconduct. It was also held in *Ashley* v. *Rivera* (1934), 220 Cal. 75, 79 [29 P.2d 199], that "the question of reversible error growing out of the admission of evidence of this character [insurance] must always be resolved upon the peculiar facts of the individual case."

In light of the previously quoted decisions, i.e., that each case depends upon its own peculiar facts; that there will not be a reversal where defendant has invited the error; that seasonable objections must be made and the court requested to admonish the jury to disregard the reference to insurance; that the denial of the motion for new trial is an implied finding that no prejudice resulted to appellant, and that the trial court is better able to determine whether the conduct of counsel was done in good or bad faith, we are unable to justify any interference with the determination of the jury and the trial court.

Lastly, appellants contend that the amount of the verdict shows that the passion and prejudice of the jurors was aroused against appellants by reason of the question of insurance being brought to the attention of the jury.

In *Lahti* v. *McMenamin* (1928), 204 Cal. 415, 422 [268 P. 644], the Supreme Court had before it a question not wholly unlike that which is now before this court, and passing upon such issue stated:

"We are not disposed to dispute defendant's contention that juries are on occasions so influenced, and the rules of evidence are so framed to exclude any direct evidence of such matters. But when the fact that defendant carries insurance is properly brought to the knowledge of the jury, either by the evidence on the part of the defendant, or indirectly in connection with proof of some material fact in the case, we know

of no rule of law that empowers any court to set aside the jury's verdict upon the assumption that such evidence might have influenced the jury in rendering a verdict which was excessive in amount. If the verdict of the jury is excessive, then it should be set aside by the court, no matter what may have prompted the jury in the rendition thereof. On the other hand, if the verdict is not excessive, as we have held to be the case in this action, then it should be sustained notwithstanding the fact that there is evidence in the record which might have tended to influence the jury in allowing excessive damages. The fact that the verdict is not excessive is conclusive proof that the jury were not improperly influenced by such evidence.''

In *Bach* v. *C. Swanston & Son* (1930), 105 Cal.App. 72, 83 [286 P. 1097], this court said:

''It has been decided a number of times by the Supreme and Appellate Courts that upon appeal the decision of the trial court and jury cannot be set aside on the ground that the damages are excessive unless the verdict is so outrageously excessive as to suggest at the first blush passion, prejudice or corruption on the part of the jury. (*Lahti* v. *McMenamin,* 204 Cal. 415 [268 P. 644]; *Reneau* v. *Hirsch,* 88 Cal.App. 1 [262 P. 1100].)''

The medical testimony in the present case shows respondent Mullanix to be permanently injured and incapacitated; he suffered back, spine and brain injuries; he was 31 years old at the time of the accident, was married and has three children; he was a lumberjack earning an average of $300 a month, and his life expectancy was 34.63 years. The jury awarded him $38,000, of which $8,053.65 was special damages. In view of such facts and circumstances we cannot say the verdict was so outrageously excessive as to suggest passion, prejudice or corruption on the part of the jury.

The judgments and orders are affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied February 15, 1945, and appellants' petition for a hearing by the Supreme Court was denied March 22, 1945.