[S. F. No. 881.   Department Two.—May 2, 1902.]

CLARA MOREHOUSE, Administratrix, etc., Respondent, v. GEORGE W. MOREHOUSE, Appellant.

ACTION TO QUIET TITLE—TRIAL—CONTINUANCE—CONTINUED ILLNESS OF DEFENDANT.—A showing of the continued illness of the defendant of such a nature that he could neither attend the trial of an action brought against him to quiet title to real estate, nor have his deposition taken without serious injury and great risk of life, is sufficient to entitle the defendant to a continuance of the cause; and where there is nothing to contradict the showing, or to raise a suspicion as to the good faith of the application, it was error to refuse the continuance.

ID.—BIAS OF JUDGE—MOTION TO CALL IN ANOTHER JUDGE.—Where the
defendant, upon a motion to call in another judge, made an affidavit
showing that the judge of the court was biased and prejudiced
against him to such an extent that he could not have a fair and im-
partial trial before him, and stated facts showing an angry quarrel
and unfriendly feeling between them, which were not controverted by
counter affidavits, the unverified statements of the judge cannot be
considered in determining the question, and the court should have
granted the motion.

ID.—STATEMENT OF JUDGE—AFFIDAVIT UPON INFORMATION AND BELIEF.—
An allegation in the affidavit, made on information and belief, as to
a statement by the judge that he would take the first opportunity
to get even with those who did not support him in the election,
without disclosing any source of the information, is entitled to no
weight.

ID.—EVIDENCE—PLAINTIFF'S TESTIMONY—PRODUCTION OF DOCUMENTS—
DUTY OF COURT.—Where it appeared from the testimony of the
plaintiff, who was administratrix of the estate of her deceased hus-
band, that there were in the possession of her attorneys writings of
his relating to the purchase of the property in controversy, which the
defendant, who was a brother of the deceased, claimed was purchased
by the deceased and himself jointly, in equal shares, it was the duty
of the court to allow the defendant to make further inquiries of the
plaintiff regarding such papers, and to order them to be produced.

APPEAL from a judgment of the Superior Court of
Glenn County and from an order denying a new trial.
Oval Pirkey, Judge.

The facts are stated in the opinion of the court.

Geis & Albery, Mastick, Van Fleet & Mastick, and W. B.
Treadwell, for Appellant.

Rodgers, Paterson & Slack, Cannon & Freeman, and Seth
Millington, for Respondent.

THE COURT.—The plaintiff is the widow and administra-
trix of the deceased, Le Grand Morehouse, and sues to quiet
the title of the estate of deceased to lands in the County of
Glenn, described in the complaint, of which, it is alleged,
the deceased died seised. The defendant (who is the brother
of deceased) pleads in defense that the land was purchased
by himself and the deceased jointly, each to own in equal
shares, and that, under an arrangement between them, the

title was conveyed to the deceased in trust, as to one half the land, for the defendant. The plaintiff recovered judgment, from which and from an order denying a motion for new trial the defendant appeals.

The first question to be considered is raised by the contention of the appellant that the court erred in denying his motion for continuance. The case, it appears, was at issue March 17, 1899, and on May 22, 1899, was by consent set for trial June 19, 1899. But on June 12th the defendant met with a serious accident, and for this reason the case was several times continued, each time against the objection of plaintiff, until September 13th, the day of the trial, when the court refused to grant the appellant's motion for a further continuance. The motion was made on the ground of the continued illness of the defendant, and his consequent inability to attend the trial, and, we think, should have been granted. The necessity of defendant's presence at the trial, if not sufficiently apparent from the nature and circumstances of the case, is shown by the affidavit of Mr. Albery, his attorney, and the impracticability of his attendance by the affidavit of his attending physician, Dr. Stitt. The latter, after describing the defendant's condition and the slowness of his recovery, owing to his advanced age, says that at no time since the defendant has been under his care, or since July 7, 1899, has "his condition been such, either physically or mentally, that his deposition could, without serious injury to him, have been taken, and that it would now be extremely dangerous to his health to take the same; that his condition at this time is such that his deposition could not be taken, nor could he be taken to Willows [the place of trial] without great risk to his life." He adds that he could not consent to the defendant's removal or to the taking of his deposition within six weeks, but that "if his condition improve, as it likely will, if perfect rest is accorded to him, he will be able to be about and to attend to his affairs by the fifteenth day of October, 1899." There is nothing in the affidavits filed on behalf of the plaintiff tending to contradict the statements of this affiant, or to raise a suspicion as to its good faith, or as to the good faith of the application for a continuance; and the case therefore comes within the authority of the decision in *Jaffe* v. *Lilienthal*, 101 Cal. 175.

Another point made on behalf of the appellant is the alleged error of the court in overruling his motion to call in another judge for the trial; and this contention must also, we think, be sustained. The facts alleged in the defendant's affidavit are not denied in the counter affidavits; nor, under the express provision of the statute, can the unverified statements of the judge be considered in determining the question involved. (Code Civ. Proc., sec. 170, subd. 4; *People* v. *Compton,* 123 Cal. 403.) Hence the ruling of the court can be sustained only on the ground of the insufficiency of the defendant's affidavit; and this, we think, was not insufficient. It is alleged in the affidavit that "prior to the commencement of this action, the affiant and the said Oval Pirkey, now judge, etc., . . . had a personal quarrel, dispute, and controversy, in which much personal spirit and ill-feeling entered, and it became and was an angry quarrel on both sides, and this affiant and the said Oval Pirkey parted in a very unfriendly manner and mood, and that unfriendly feeling still exists on the part of the said Oval Pirkey toward and against this defendant, and affiant verily believes—and states the facts to be—that by reason of the feeling thus engendered the said judge is biased and prejudiced against this defendant and his case to such an extent that this defendant cannot have a fair and impartial trial before said judge."

It may be admitted, as urged by the respondent's counsel, that from the mere fact of the quarrel alleged it cannot be conclusively, or even probably, inferred that the judge could not fairly try the defendant's case; and we are glad to believe that with most judges the inference would be incorrect. But here there is a direct allegation of the fact of prejudice and bias on the part of the judge; and though the allegation is based— as in most cases it must be based—merely on the belief of the affiant, yet it is accompanied by a statement of the facts on which the belief is based, as complete as the nature of the case admitted of; and this was all that could reasonably be required. The court should therefore have granted the motion.

In reaching this conclusion, it is proper to say, we have attached no importance to the allegation of the defendant's affidavit, that after his election the judge said that he would take the first opportunity of getting even with those who did not support him in the election. The allegation of a specific

fact of this kind, made on information and belief, without disclosing the source of the affiant's information, can carry with it but little weight, and, in the case of a statement so improbable as is here made, none at all.

The only remaining point necessary to be considered was presented by the rulings of the court refusing to require the plaintiff, who had been called as a witness by the defendant, to produce certain papers demanded by the latter, or to answer certain questions with regard thereto. The witness had testified that there were in the possession of her attorneys certain writings of her intestate husband relating to the purchase of the land in controversy; and in response to the demand of defendant's attorney for an inspection of these documents, her attorney had declined to allow an inspection of any papers, "unless specifically called for." Thereupon the defendant's attorney asked the plaintiff, then on the stand, to produce "the paper in her possession in which Le Grand Morehouse has set out a statement referring to the purchase of the Clark Valley ranch, and in which he gives the figures as to the amount of the purchase price, and how it was paid, and by whom paid; and reference made in the statement to the method of payment"; and with this request plaintiff's attorneys declined to comply, for the reason that it had not been shown that any such paper was in their possession or under their control. The witness was then asked whether she had such a paper, either in her possession or under her control, or in the possession of either of her attorneys; and this question, being objected to by plaintiff's counsel, was excluded by the court. The witness was then successively asked if she had in her possession or under her control "a paper in the handwriting of Le Grand Morehouse, in which it is stated or shown that Geo. W. Morehouse put into the purchase of the Clark's Valley ranch his Solano County property, at a figure of $42,500"; or "a letter written by George W. Morehouse to Le Grand Morehouse (in the month of July, 1894), in which this language is used, or in substance and to this effect: That 'I will put (referring to the writer, George W. Morehouse), I will put in my Solano County ranch at $42,500 and will move up on the ranch (referring to Clark's Valley ranch) if you will pay the balance of the purchase price' (referring to the purchase price),"

or ''a letter or copy of a letter written by Le Grand More-house in which he uses, in words and substance, and to this effect, this language: 'If you will put in your Solano County farm and can receive $42,500 for it in that way, and will move up on it, the Clark's Valley farm, I will see to it, and pay the balance of the purchase price.' '' But all these questions were successively objected to and ruled out by the court.

The questions, we think, were all legitimate, and should have been allowed. It was the duty of the plaintiff, as a witness, to disclose all the facts known to her bearing on the issues, including writings in her possession (Code Civ. Proc., sec. 2094) ; and with regard to the latter, it was the duty of the court, when the existence of the documents was disclosed, to order their production. (Code Civ. Proc., sec. 1000, *ad fin.; Ex parte Clarke,* 126 Cal. 239.[1]) The case before us is to be distinguished from that of a bill of discovery, or an order for an inspection of documents, or a *subpœna duces tecum.* Here the question relates to the duty of a sworn witness to speak the whole truth (Code Civ. Proc., sec. 2094), and of the court to require the production of documents shown to be in the possession of the witness. As said in the case above cited, ''When a witness is in court . . . and discloses the fact that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it''; which indeed is but another expression of the provision in the latter part of section 1000 of the Code of Civil Procedure, cited *supra.*

For these reasons, it follows that the judgment and order appealed from must be reversed, and it is so ordered.

Hearing in Bank denied.

[1] 77 Am. St. Rep. 176.