[Civ. No. 6289. Third Appellate District.—May 21, 1940.]

ED. L. CORDI, Respondent, v. ROSA GARCIA et al., Appellants.

Butler, Van Dyke & Harris and Hoge, Pelton & Gunther for Appellants.

L. C. Smith and Alfred E. Frazier for Respondent.

THOMPSON, J.—A verdict was returned for plaintiff in the sum of $8,000 as damages for injuries sustained by him as the result of being struck by an automobile while he was crossing a street in Redding. He was then engaged in performing his duties as a government letter carrier. Judgment was rendered in accordance with the verdict. For the purpose of appeal it was conceded there is substantial evidence to show that the driver of the machine was guilty of negligence and that the plaintiff was free from contributory negligence. It is insisted the plaintiff was only slightly injured; that the judgment is excessive; that the court erred in its

rulings in the course of the trial and that plaintiff's attorney was guilty of prejudicial misconduct requiring a reversal of the judgment.

June 24, 1937, Manuel Garcia, a minor, was driving a Buick automobile owned by his mother along a public street in Redding. He was on the wrong side of the street and was paying slight attention to his driving. The plaintiff, a United States letter carrier, 52 years of age, who had served the government in that capacity for seventeen years, was crossing the street in the middle of a block when he was struck by the bumper of defendants' machine. He was knocked down by the force of the blow. The contents of his mail bag were scattered on the pavement. He received injuries to his right shin and to his left shoulder. He was considerably shocked by the fall and was dazed and dizzy for a short period of time thereafter. An interval of about two hours elapsed before he resumed his duties and he was never thereafter incapacitated from the regular performance of his work. The entire case turns on the questions as to the seriousness of plaintiff's injuries and upon the effect of the alleged errors of the court and the misconduct of plaintiff's attorney. Eighteen months passed from the time of the accident to the trial of the case.

Several medical expert witnesses testified regarding the effect of the injuries sustained to plaintiff's right leg and left shoulder. Their evidence is conflicting. There is substantial proof that the small bone of the right leg has thickened considerably as a result of the injury, and that the plaintiff suffered recurrent pain on that account. There is evidence that he suffers from pain in his feet which may be accounted for by the necessity of constant use of them in the performance of his duties. The chief controversy relates to the injury of his left shoulder. There is no doubt plaintiff has sustained a partial loss of the functioning power of his left arm. He suffers pain when he attempts to raise that arm vertically. He said he had no such loss of power or pain prior to the accident. Two physicians testified positively that his loss of functioning power and pain in that shoulder were attributable to the injury received. Other physicians just as emphatically asserted a chronic condition of arthritis in that shoulder caused the loss of functioning power and that it is not due to the injury received. As this court said under similar circum-

stances in the case of *Reuter* v. *Hill,* 136 Cal. App. 67, at p. 79 [28 Pac. (2d) 390]:

"In view of the conflict in evidence, it became a problem for the jury to determine whether the plaintiff was suffering from a broken ankle and a wrenched spine, or whether he was afflicted with arthritis only."

Since there is a conflict of evidence in that regard, this court is bound by the implied finding of the jury that the loss of power in the arm is due to the injury received.

■ There is no error in the ruling of the court on the cross-examination of Mrs. Rosa Garcia, the mother of the boy who drove the automobile which was involved in the accident. She was asked by plaintiff's attorney if she had not previously had trouble on account of her boy "getting into other automobiles". Counsel for the defendants assigned that question as prejudicial. Of course it was improper, but it was harmless. On the court's own motion the judge ruled that it was improper cross-examination, and the question was not answered.

The cause was tried with unusual vigor on both sides. There were frequent verbal conflicts between counsel which tended to disturb the regular progress of the trial. The charges and countercharges of counsel occasionally became acrimonious. In spite of that fact the trial judge appears to have retained his judicial temper remarkably well. He seems to have fairly and impartially determined the issues which were presented to him. Some of his remarks to counsel which have been challenged as prejudicial, in our opinion, have been misconstrued. We find nothing prejudicial in the conduct of the trial judge.

■ Two incidents occurred in the course of the trial which, on account of the amount of the verdict as applied to the extent of the injuries received by the plaintiff, seem to require a reversal of the judgment.

At the close of plaintiff's evidence, he moved the court in the presence of the jury to amend his complaint by increasing his demand for judgment from $10,000 to $17,400 to conform to the evidence. The theory which was argued by the plaintiff was that if he became totally disabled on account of his injuries from performing his duties as a government mail carrier he would forfeit his right to $100 per month as federal civil service retirement pension, aggregating the additional sum of $13,200 as damages to which he would be entitled.

That prospective loss was calculated on plaintiff's expectancy of life based on accepted mortality tables. It is true that the complaint alleges that plaintiff "in a very short time" would be required to cease working and that he would then "forfeit said fifteen years' seniority with the United States postoffice and the value thereof" on account of his injuries. In his argument to the jury plaintiff's attorney urged the jury to consider, in fixing the amount of their verdict, the plaintiff's forfeiture of his pension when he was forced to retire. He said, "I . . . only asked for ten thousand dollars. I didn't know that that leg was going to grow progressively worse. . . . The only thing that will have any tendency or possibility of relieving that condition . . . is for him to stay off his feet, . . . *which means he must give up his pension, his seventeen long years of service.*"

To that statement the defendant's attorney objected. He asserted that it was not true that the plaintiff would forfeit his pension. He assigned the statement as prejudicial misconduct. The court merely replied, "It will be up to the jury."

Plaintiff's attorney further argued along that line:

"The records show the man is now suffering from an injury he received when he was struck by this automobile, and he will continue to suffer from it the rest of his natural life. . . . Let's not be picayunish about it. Let's be reasonable. If counsel thought Mr. Cordi wasn't hurt, and hurt badly, why did he make such an ado when I wanted to amend my complaint and ask for more money?"

Continuing his argument the attorney further said:

"At the age of sixty-five had he (Mr. Cordi) not received that injury he would have had a pension coming to him of One Hundred Dollars a month, . . . we could count on . . . at the end of a thirty year grind . . . At the age of sixty-five . . . Mr. Cordi has the right to expect that he will have a normal span of life remaining of eleven years; . . . that he would have the right to expect the sum of approximately twelve hundred dollars a year, one hundred dollars a month. . . . Eleven years at twelve hundred dollars a year is thirteen thousand two hundred dollars that he would normally expect to get from the United States government from the time he reached his age of sixty-five, and *through the pension* to the

time of death *there is a potential thirteen thousand two hundred dollars that he has been damaged.*"

To this latter statement counsel for the defendants again objected, assigning .it as prejudicial misconduct, and asked the court to declare a mistrial on account of adverse counsel's conduct. The court denied the motion to declare a mistrial, and said he thought the former denial to amend the complaint should not be touched upon in the argument, but explained that he only denied the motion to amend the complaint because it was applied for too late, and not because the loss of pension might not be a proper element of damages. The court failed to instruct the jury to disregard that argument. Continuing his argument plaintiff's attorney then said:

"Did you ever see a wounded bird that didn't flutter? In other words, let's put it this way, when I am interrupted it must hurt; the shoe must fit. They usually never holler unless they are hurt."

We are of the opinion the foregoing reference to the loss of retirement pension constitutes prejudicial error for two reasons; the asserted necessity of plaintiff's retiring on account of his injuries seems to be remote and speculative, and because that claim is contrary to the provisions of the Federal Retirement of Civil Service Employees Act. (5–6 U. S. C. A., chap. 14, p. 285, secs. 691–710.) Section 691 of that act provides that city and rural letter carriers shall be eligible to retire at the age of sixty-five years. Section 699 authorizes the payment of 60 per cent of an employee's annual average basic salary after 30 years' service. Section 710 provides that when such employee shall have served fifteen years before reaching the age of retirement and then becomes totally disabled for useful and efficient service *by reason of disease or injury* not due to his own bad habits, intemperance or wilful misconduct, he shall be entitled to retire on the same annual annuity provided for in sections 698 to 706 therein. From these provisions of the act it appears that since the plaintiff in this case had actually served as a letter carrier for more than seventeen years, if he was thereafter compelled to retire because of injuries sustained on account of the accident in question, he would not forfeit his pension as claimed by his attorney, and as argued to the jury, but he would be entitled to the same *pro rata* compensation as though he had served the entire thirty years. It was therefore erroneous to permit

counsel to argue, over the objection of the defendants that plaintiff sustained damages by forfeiting his retirement pension on account of possible disability growing out of the accident. Since the jury was urged to consider as an element of damages the forfeiture of that pension we are unable to determine what proportion of the $8,000 verdict was erroneously allowed on account of loss of retirement compensation. That argument was therefore prejudicial. It constitutes reversible error.

It appears that after the accident occurred and before the time of trial the plaintiff consulted his physician, Doctor Gerrard, at Redding. Doctor Gerrard sent him to a noted specialist at San Francisco by the name of Doctor Brown, who thoroughly examined him, and then sent him to another specialist in that vicinity by the name of Doctor Linde, who also carefully examined him. It appears from depositions of these last-mentioned medical experts, which were received in evidence, that the plaintiff was suffering from "no objective changes in any of his central or peripheral nervous system". That physician said he found only "slight numbness over the right aspect of the left upper shoulder. . . . It is a condition which gradually disappears over a period of months."

Doctor Linde, who examined the patient five months after the accident occurred, said in his deposition, regarding the condition of the plaintiff's left shoulder, "I was of the impression that his shoulder condition was due to arthritis." In effect he concluded it was not due to the result of his injury.

These medical gentlemen sent to Doctor Gerrard the reports of their examinations in the forms of letters. On cross-examination of Doctor Gerrard at the trial, defendants' counsel, for impeachment purpose, asked him if the San Francisco physicians had not reported to him the result of their examinations, and if they had not told him the condition of plaintiff's left arm was due to arthritis and not to the injury which he previously received. Doctor Gerrard's reply was that he did not recall. Other questions regarding the purport of those reports were also asked for impeachment purpose. A controversy arose between counsel regarding the use of those reports for the purpose of cross-examination. While Doctor Gerrard was on the witness stand, the defendants demanded the production of those reports to be used for the

purpose of cross-examination. The attorney for plaintiff refused to permit the production or use of those documents for cross-examination. The court said it was powerless to compel their production under the circumstances. The examination of Doctor Gerrard was completed without the use of the reports. At the following session of court, in the absence of Doctor Gerrard, the attorney for plaintiff announced that he had the reports of the San Francisco physicians, and since their contents had been challenged he would offer them in evidence. Defendants' counsel consented to the offer. The court then suggested that if they were received in evidence at the request of plaintiff, he would be bound by that evidence. Plaintiff's attorney declared that he was not willing to be bound by the statements of those documents, and he thereupon withdrew his offer to admit them. Defendants' attorney then demanded the right to see and read them, saying that he might then offer them himself. Plaintiff's counsel refused to permit defendants' attorney to read them. The letters were not introduced in evidence or read to the jury.

During his argument to the jury plaintiff's attorney referred to those challenged reports as follows:

"He (defendants' attorney) accused me of withholding . . . two letters that Dr. Gerrard received from Dr. Brown and Dr. Linde. Did I withhold them when I offered—when I stood up here and offered that they be read to you? Oh, no. Mr. Harris wasn't good enough sport to say 'All right, let's read them.' (He said) 'Let me see them first.' "

Defendants' counsel assigned that statement as untrue. He correctly said that plaintiff's attorney withdrew his offer to admit the letters when he was told that he would be bound by their contents, and that plaintiff's counsel then replaced them in his pocket and refused to permit inspection of the letters. The court stated that the jury would remember what transpired in that regard. It is not contended the court erred in refusing to require plaintiff's attorney to permit an inspection of the letters. It is true that, under proper circumstances, a party to an action, who has in his possession in court documents which would be competent evidence against him, may be entitled to an order permitting the inspection and use of them. (*Morehouse* v. *Morehouse,* 136 Cal. 332, 337 [68 Pac. 976]; 10 Cal. Jur. 880, sec. 156.) The right of defendants' attorney in this case to inspect and use the let-

ters in question for impeachment purpose might have been properly granted. But standing alone, we are of the opinion that ruling was not reversible error. Upon the state of the record it may not have been error at all. However, in his subsequent argument to the jury the plaintiff's attorney referred to that incident regarding the letters and accused defendants' counsel with unfairly trying to entrap him and inferred that the contents of those letters would not be unfavorable to his client. This reference to the letters was assigned as prejudicial misconduct.

It was prejudicial error for plaintiff's attorney to refer in his argument to the jury to the contents of reports or letters affecting the injuries received by the plaintiff, the inspection and use of which documents were refused and which instruments were not received in evidence. The jury may have secured the impression from the argument that they were much more favorable to the plaintiff than the facts would warrant. Under somewhat similar circumstances it was held in the case of *Baroni* v. *Rosenberg*, 209 Cal. 4 [284 Pac. 1111], to be prejudicial misconduct to refer in argument to the contents of a document providing for certain payments by the Continental Casualty Company, which was not received in evidence, even though the court instructed the jury to disregard the statements. The court said in that regard:

"Moreover, the entire discussion as to compensation was extraneous to the issues. Although the court admonished the jury to disregard it, the harm, if any, was already done and it had no power to wipe away the false concept of the situation imprinted upon their minds. The remark was properly assigned as misconduct and, despite the admonition, was, in our opinion, prejudicial."

In the case last cited the Supreme Court affirmed an order of the trial court granting a new trial.

For the reasons heretofore stated, we are impelled to reverse the judgment. It is so ordered.

Pullen, P. J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 20, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1940.