[Civ. No. 7299.   Third Dist.   June 12, 1947.]

LUCILLE McKINLEY et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

Jones & Quinn, T. B. Scott and Nathan B. McVay for Appellants.

Cleary & Zeff and Francis W. Halley for Respondents.

SCHOTTKY, J. pro tem.—On February 21, 1944, at about 11 a. m., one John McKinley was injured fatally when a truck, in the cab of which he was riding, was struck by a locomotive of the Southern Pacific Company without any cars attached to it, at the B Street crossing in the city of Modesto. McKinley's widow, individually and as guardian ad litem for three minor children, brought an action to recover damages for his death, and the trial court, sitting without a jury, awarded plaintiffs and respondents a judgment for $25,000 against defendants Southern Pacific Company, Elmer F. Ahlborn, the locomotive engineer, Howard H. Shafer, the locomotive fireman, and Frank Leo, Jr., who was driving the truck at the time of the accident. Following the denial of motions for a new trial, said defendants appealed from the judgment, the appeal of defendant Frank Leo, Jr., being separate from the appeal of the Southern Pacific Company and its employees.

As grounds for a reversal of the judgments against them, appellant Southern Pacific Company and its employees made the following contentions: (1) That there was no evidence of any negligence on the part of the Southern Pacific Company or its employees; (2) that John McKinley, the decedent, was as a matter of law guilty of contributory negligence which proximately contributed to his death; (3.) that the court erred in rulings during the trial to the material prejudice of these appellants.

Appellant Frank Leo, Jr., contends that the judgment against him should be reversed because the decedent "was guilty of contributory negligence as a matter of law."

Before discussing these contentions of appellants we shall give a brief summary of the evidence.

Appellants Shafer, Ahlborn and Frank Leo, Jr., were called as witnesses by respondents under section 2055 of the Code of Civil Procedure. Shafer testified that he was fireman on engine 3102 which was being returned from Merced to Tracy without cars attached; that he was on the left side of the cab watching ahead; that he saw the truck approach the track and called to the engineer to stop when a collision seemed

imminent, the engine then being 120 to 130 feet back of the B Street crossing; that the bell had been ringing for some 1320 feet back of the crossing and that the engine was traveling about 20 miles per hour as they came up to the crossing; that the whistle was first blown about 1700 feet back of the crossing and the last blast was still sounding when he called to the engineer and the engineer applied the brakes in emergency; that the engine hit the truck just back of the door of the cab and traveled about 600 feet after the accident; that he saw the truck as it turned to the right and approached the track at an angle, appearing to slow down; that at the time he called to the engineer to stop, the front of the truck was 20 to 25 feet from the track and was traveling at a speed of six to eight miles per hour; that the bell was still ringing after the collision.

Ahlborn, the engineer, testified that he was on the right side of the cab and that as they approached the B Street crossing the fireman (Shafer) called to him but he could not hear what the fireman said; that he did not apply his brakes at that instant but did apply them in an emergency position when the fireman pulled his head into the cab; that when the fireman called to him they were 120 to 130 feet from B Street crossing and that the engine ran 500 to 600 feet past the crossing; that it stopped about 200 feet beyond the truck; that he had been in the employ of the Southern Pacific Company for 24½ years, all in engine service, and that there was no defect in the engine or any condition to affect its stopping; that he had made an inspection of the brakes before he left Merced and they were in good condition and were operated by compressed air; that the bell was ringing approaching B Street crossing and that he heard it; that he began to blow the whistle at the east end of the railroad bridge (about 1700 feet from the crossing); that there was a lapse of between five and six seconds between the first and second series of blasts and that he started the second series about 300 feet east of the crossing and had not completed it when the fireman called to him.

Appellant Frank Leo, Jr., testified that he was 16 years old; that his father's name was Frank Leo; that he was driving the truck when the collision occurred; that decedent John McKinley was riding with him; that the truck was being used to haul milk picked up from farms and taken to the Nestle Plant at Ripon; that they had completed picking up

the milk and were on the way to Ripon; that as he came up to the B Street crossing they were going about ten miles per hour; that he slowed down and was traveling about six when he got up to the tracks; that he heard no bells ringing or any whistle blowing; that he looked at the wigwag and did not see it moving; that his eyesight and hearing were normal; that it was raining and that there was only one windshield wiper on the truck which was on the driver's side; that the right half of the windshield was somewhat blurred and the side of the cab had windows; that the B Street crossing goes on an angle to the left, and from the time he started to turn he could not see more than 50 feet south of the edge of the crossing; that when he came up to the crossing he looked to the left and asked McKinley if there were any trains coming; that McKinley looked and said ''O.K.'' and the witness then started to cross the crossing but never got across; that he was supposed to help McKinley to pick up the milk and show him where to go, and that McKinley was supposed to drive; that he was present the night before when his father told McKinley not to let the boy drive as he did not have a driver's license; that McKinley asked him to drive, and he at first refused but near the end of the route he did take the wheel and was driving at the time the accident occurred.

Roy Livingston, a police officer, testified that he had occasion to go to the scene of the accident while the train was still there, and that the distance from the crossing to the truck was about 600 feet, the engine being some distance west of the truck.

Marion L. Stanchfield, a witness called by respondents, testified that he had been an engineer and fireman for 28 years. He had examined the crossing at B Street and had in mind that there was no grade there. He stated that a Mikado type engine such as the one involved here, with brakes in good condition after full application of brakes, was traveling at a speed of between 50 and 55 miles per hour if 925 feet were required to stop the engine, and that if 725 feet were required to stop it, the engine would be traveling between 45 and 50 miles per hour. He stated further that an engine such as the one here involved, if traveling 20 miles per hour, should stop within 130 and 135 feet after full application of brakes.

Mrs. Madeline Amorante was called by appellants and testified in substance that she and her husband, Ernest Amorante,

were traveling in an automobile behind the truck; that they first saw it when it was ahead of them on the old 99 highway bridge across the Tuolumne River (which paralleled the railroad bridge); that she heard the whistle blow while she was on the bridge and looked back and saw the train; that she saw the truck until it was hit and saw it turn off of 7th Street into B Street.

Ernest Amorante, also called by appellants, testified that he saw the truck about 150 feet ahead of him while he was on the bridge; that the truck was creeping along slowly as it made the turn down B Street and that he thought it was going to stop; that he heard the first whistle from the engine when he was on the bridge, and there were intervals between the toots of the whistle which continued right up to the time of the collision; that the engine was traveling 20 to 25 miles per hour; that the truck did not stop before it was hit but slowed up, appearing as if it were going to stop; that he did not hear the bell ringing on the engine.

Henry M. Noels, a signal maintainer, employed by appellant Southern Pacific Company, testified that he had inspected the wigwag signal at the B Street crossing at 4 p. m. on February 19th, two days prior to the accident, and also at 11:50 a. m. on February 21, the day of the accident, and that the equipment was in good working order. He testified further that rainy weather would not stop the signals from working.

Francis W. Halley testified that the distance from the center of the B Street crossing to the east end of the railroad bridge is 1,707 feet, and that the distance from the center of the B Street crossing to the east end of the old highway 99 bridge is 1,698 feet.

The first contention of appellants Southern Pacific Company and its employees is that there was no evidence of any negligence on their part. Said appellants assert that the evidence is not fairly susceptible of any other conclusion than that the engine was approaching the crossing at a speed of 20 to 25 miles per hour, that the whistle on the engine had been blown at intervals from the easterly end of the highway bridge up to the crossing, and that the truck approached at a speed and in a manner which gave the appearance that it was going to stop. Said appellants state further that the conflicting evidence upon which respondents rely is "so uncertain, so inherently lacking in probative value that it is not

worthy of consideration.'' Respondents in reply contend that the court's finding of negligence on the part of said appellants is properly based on four points: (a) Extreme speed; (b) failure to sound the whistle or ring the bell; (c) failure of the fireman to give the proper signal to warn the engineer; (d) failure of warning device.

It is a rule too well established to require the citation of authorities that, before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such prevailing party from recovering a judgment.

It appears from the evidence, hereinbefore summarized, that there is support in the record for a finding that the engine traveled 925 feet after the time the fireman called to the engineer. The witness Stanchfield testified that with an engine of the type involved here, if the brakes were in good condition, it could be stopped within 130 to 135 feet if the brakes were fully applied and the engine were traveling 20 miles per hour; that if 925 feet were required to stop it, it would be traveling at a speed between 50 and 55 miles per hour; and that if 725 feet were required to stop, it would be traveling at a speed of between 45 and 50 miles per hour. Appellants make no contention that it would not be negligence on the part of the appellant railroad company and its employees to operate the engine at a speed of 45 to 55 miles over a crossing in the city of Modesto, but said appellants vigorously attack the testimony of the witness Stanchfield, even though they produced no witness to contradict the opinion evidence of that witness. It may well be that the criticism of Stanchfield's testimony is justified, but the witness was before the trial court and was thoroughly cross-examined by counsel for appellants. It is not the function of an appellate tribunal to pass upon the weight of the testimony of the various witnesses because that is the duty of the trial court. We cannot say upon the record here that the trial court could not properly find that the engine was traveling at a speed of from 50 to 55 miles per hour over a heavily traveled crossing in the city of Modesto and that such a rate of speed was excessive. While it is true that the engineer and the fireman and several other witnesses testified that

the engine was not traveling more than 20 miles per hour, such testimony merely created a conflict in the evidence.

Appellants Southern Pacific Company and its employees contend also that the evidence is susceptible of no other conclusion than that the whistle was blown at intervals from the easterly end of the highway bridge up to the crossing. All of the witnesses except appellant Frank Leo, Jr., who was called by respondents under section 2055 of the Code of Civil Procedure, testified as to the blowing of the whistle or the ringing of the bell. Appellant Frank Leo, Jr., testified that he heard no whistle or bell and that his hearing was normal. While it must be conceded that it would seem that the evidence clearly preponderates in favor of a conclusion that the whistle was blown and the bell rung, yet we cannot say, as a matter of law, that the testimony of Frank Leo, Jr., does not support the opposite conclusion.

In *Eastman* v. *Atchison, T. & S. F. Railway Co.*, 51 Cal. App.2d 653, 660 [125 P.2d 564], five witnesses testified that the bell was ringing and the whistle had been blown, two of these witnesses being the engineer and the fireman. As against this testimony the plaintiffs produced one witness who testified that just as the train came to the crossing the wigwag signal started and he heard a very slight bell; that up to that time he heard no bell at all and at no time did he hear any whistle. The court said:

"It is doubtless the law that failure to comply with the regulations prescribed by section 486 of the Civil Code as to ringing the bell and blowing the whistle of a railroad train upon approaching a street crossing is prima facie evidence of negligence on the part of the railroad company [citing cases] ; *and that where the evidence is conflicting as to whether the train crew complied with such statutory requirement, the implied finding of the jury adverse to the railroad company is binding on appeal.* [Citing cases.] Furthermore, the courts have held that if a witness is in a position to hear the bell or the whistle of the locomotive and he testifies he heard neither, such testimony is sufficient to raise a conflict with positive testimony to the contrary that such warnings were given. [Citing cases.]" (Italics added.)

Also see: *Downing* v. *Southern Pacific Co.*, 15 Cal.App.2d 246 [59 P.2d 578] ; *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748 [134 P. 709]; *Lahey* v. *Southern Pacific Co.*, 16 Cal.App.2d 652 [61 P.2d 461].

We are, therefore, unable to agree with the contention of said appellants that there was no evidence of any negligence on their part. As we have pointed out, there was evidence upon which such a finding could be based, and the trial court having so found, we cannot disturb such finding.

The second contention of appellants Southern Pacific Company and its employees is that John McKinley, the decedent, was, as a matter of law, guilty of contributory negligence that proximately contributed to his death. Said appellants point out that the trial court found that appellant Frank Leo, Jr., was guilty of negligence which was a proximate cause of the accident and contend that the negligence of Frank Leo, Jr., was the negligence of John McKinley. Said appellants argue that it was the duty of McKinley under the instructions of his employer to control the operation of the truck and that he was responsible for the negligence of the driver because, as said appellants contend, the boy was McKinley's agent. Said appellants set forth the testimony of appellant Frank Leo, Jr., that he was supposed to help McKinley pick up the milk and show him where to go, and that McKinley was supposed to drive; that he was present the night before when his father told McKinley not to let the boy drive; that McKinley asked him to drive, and he at first refused, but near the end of the route did take the wheel. Appellants argue that this evidence is uncontradicted and without conflict.

Respondents in reply urge that the trial court was not bound to believe the testimony of appellant Frank Leo, Jr., and that respondents were not bound by his testimony as he was called by them under section 2055 of the Code of Civil Procedure. They point out that Frank Leo, Sr., was not called as a witness to corroborate his son; that Leo, Sr., sent his son with McKinley on three different occasions; and that it was clear that Leo, Jr., was an agent and servant of Leo, Sr.

Respondents cite the case of *Cioli* v. *Kenourgios,* 59 Cal. App. 690, where this court said at page 697 [211 P. 838]: "The fact that plaintiff called the alleged conspirators to the witness-stand did not compel approval by him of their testimony. He could use their appearance on the stand, their words, their acts—in fact anything they could furnish in his favor, and reject the rest. The salutary provision of section 2055 of the Code of Civil Procedure was designed to prevent as far as possible parties to an action from perpetrating

fraud and dishonesty. It strips them of former barriers used for shielding falsehood.'' They also cite the case of *Blanc* v. *Connor*, 167 Cal. 719 [141 P. 217], in which the court said at page 722:

"The rule was thus stated in *Davis* v. *Judson*, 159 Cal. 128 [113 P. 150], in which Mr. Justice Lorigan, delivering the opinion of this Department, said: 'While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.' ''

In the case of *Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868], our Supreme Court said, at page 461:

"There are many reasons why a jury may refuse to believe a witness. Section 1847 of the Code of Civil Procedure provides: 'A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence; and the jury are the exclusive judges of his credibility.' Section 2061(3) of the Code of Civil Procedure provides: 'That a witness false in one part of his testimony is to be distrusted in others.' In passing on the credibility of a witness, the jury is entitled to consider his interest in the result of the case. (See cases collected in 27 Cal.Jur. 180, sec. 154.) ''

Respondents argue further that the evidence set forth by appellants is not uncontradicted. They point out that respondents are entitled to rely upon the presumption that a person takes ordinary care of his own concerns (Code Civ. Proc., § 1963, subd. 4), and that the presumption that dece-

dent exercised due care at the time of the accident is evidence in the case and is sufficient to support the finding of the court that decedent was not negligent.

The case of *Smellie* v. *Southern Pacific Co.*, 212 Cal. 540 [299 P. 529], bears a striking similarity to the instant case, so far as the question of contributory negligence is concerned. It was a case arising out of the death of one Smellie when the truck in which he was riding, which was being driven by one Ireland, was struck at a railroad crossing in the city of Madera by one of defendant's trains. One defense was contributory negligence of the deceased. Plaintiff put Ireland, also a defendant, upon the witness stand under section 2055, and upon cross-examination by counsel for his codefendant, Southern Pacific Company, Ireland testified that the deceased said, just before going onto the track, "It's all clear, let's go." This evidence was not contradicted by any witness. The trial judge directed a verdict in favor of defendants. In reversing the judgment our Supreme Court said, pages 555-561:

"This brings us to the point of considering the effect of the testimony of the defendant Ireland. Conceding it to be contradictory to and inconsistent with the presumption, did it merely produce a conflict in the evidence, or did it overcome and dispel it?

" 'In the present action, as already stated, Ireland, although examined by the plaintiff, was called under section 2055 of the Code of Civil Procedure. This section reads as follows: "A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendents or managing agent of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness when so called, may be examined by his own counsel, but only as to the matters testified to on such examination."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 'The effect of evidence given by an adverse party under section 2055 was commented on by this court in the recent case of *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 686 [269 P. 529, 532]. In that case we said: "While the two train-

men, who were called for cross-examination under section 2055 of the Code of Civil Procedure, testified that they gave the required signals, both by ringing the bell and sounding the whistle, the plaintiffs, especially upon a motion for a nonsuit, would not be concluded by their evidence, it being the duty of the court upon a motion for a nonsuit to accept the evidence most favorable to the plaintiffs.''

'' 'As opposed to the foregoing rule and the authorities cited in support thereof, the respondents rely principally upon the case of *Figari* v. *Olcese,* 184 Cal. 775 [15 A.L.R. 192, 195 P. 425, 428], but we find nothing in that case contrary to the views hereinbefore expressed, or to the authorities last cited. In that case the court held, upon the trial of an action in which the evidence had been produced by the calling of an adverse witness under section 2055 of the Code of Civil Procedure, that the evidence of such witness might be given its proper weight in the final determination of the issues of the case. As bearing out our construction of said section, this court in that case held: ''In other words, such evidence is to be treated as though given on cross-examination.''

'' 'Neither do we think that in any of the following cases, cited by respondent, is there anything to be found which is contrary to the construction we have placed upon section 2055 of the Code of Civil Procedure: *Brown* v. *Chevrolet Motor Co.,* 39 Cal.App. 738 [179 P. 697]; *Preo* v. *Roed,* 99 Cal.App. 372 [278 P. 1052]; *Andrews* v. *Waldo,* 205 Cal. 764 [272 P. 1052]; *Heiter* v. *Hirschfeld,* 205 Cal. 625 [271 P. 1051]; *Koster* v. *Southern Pac. Co.,* 207 Cal. 753 [279 P. 788]. In *Brown* v. *Chevrolet Motor Co., supra,* and in *Koster* v. *Southern Pac. Ry. Co., supra,* no reference is made to section 2055. While in the other cases witnesses were called under said section, no question was presented nor discussed in the opinion of any of these cases as to the force and effect of such evidence against a disputable presumption.

'' 'Our conclusion, therefore, is that the testimony of a witness called under section 2055 of the Code of Civil Procedure is not, when weighing it against a presumption, to be considered, nor is it, really, evidence of the party calling such witness, and that the evidence thus produced does not dispel a presumption contrary thereto, but in favor of the party calling such adverse witness. This testimony is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the

court, or if the case is before a jury, by the jury. When the action is before a jury, however, the duty of weighing this evidence is with the jury and not with the court upon a motion for a nonsuit or directed verdict.

" 'Besides the testimony of Ireland has certain elements of weakness which render it of doubtful probative value, and which, we think, present additional reasons why it should not, as a matter of law, be held to be conclusive of the fact to which it relates. In the first place it is the testimony of an adverse party, and a jury may disregard the testimony of such a witness as against a presumption if the latter satisfies them. (*Adams* v. *Hopkins,* 144 Cal. 19 [77 P. 712]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal.App. 332 [187 P. 996]; *Keating* v. *Morrissey,* 6 Cal.App. 163 [91 P. 677].)

" 'Then again the testimony of Ireland related to a declaration of another person. Evidence of the declarations or oral admissions of a party are always received with caution. (Code Civ. Proc., sec. 2061, subd. 4.) The reason for this rule is that, "In most cases it is impossible, however honest the witness may be, for him to give the exact words in which the declaration or admission was made. Sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed. The slightest mistake or failure of recollection may totally alter the effect of the declaration or admission." (10 Cal.Jur., p. 1081; *Davis* v. *Davis,* 26 Cal. 23, 44 [85 Am.Dec. 157].)

" 'A third inherent weakness to be found in the testimony of Ireland is that it purports to give the statements or declarations of a deceased person. Regarding testimony of this character, this court said: "The evidence is of oral admissions against interest by a man whose lips are sealed in death. What, then, does the law say of such evidence (assuming now its admissibility)? The Code of Civil Procedure declares (sec. 2061, subd. 4) that 'the evidence of oral admissions of a party ought to be received with caution by a jury.' In *Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am.St.Rep. 87, 39 P. 200], this court in bank said, 'No weaker kind of testimony could be produced.' Again in bank (*Austin* v. *Wilcoxson,* 149 Cal. 24 [84 P. 417]) this court has said: 'It is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory.' " (*Estate of Emerson,*

175 Cal. 724, 727 [167 P. 149, 151].) We might go on and cite many other authorities, but the above are sufficient for our present purpose. To invoke a rule which would deprive a party of the right to have a jury pass upon the weight of evidence of this character would be contrary to an unbroken line of decisions of this court, and its effect would be in many instances to deprive a party to an action of the right, guaranteed to him by the law of this state, to a trial by jury.

" 'We are, therefore, of the opinion that the testimony of Ireland, as against the presumption that the deceased took ordinary care of his own concerns, was not sufficient as a matter of law to dispel said presumption, but, on the other hand, merely tended to create a conflict with said presumption, which it was the right of the appellants to have passed upon by the jury in its final deliberations, and not by the court on a motion for a directed verdict.

" 'The respondent, the Southern Pacific Company, contends that as between it and the appellants the testimony of Ireland must be regarded as evidence of the appellants and, therefore, under the rule enunciated in *Mar Shee* v. *Maryland Assur. Corp., supra* [190 Cal. 1 (210 P. 269)], it entirely overcame and dispelled the presumption of due care on the part of the deceased. Said respondent cites no authority to support this contention, and we think to assent to it would be to place an unauthorized limitation upon the remedial provisions of section 2055 of the Code of Civil Procedure.' "

Counsel for appellants Southern Pacific Company and its employees in their brief make a vigorous attack upon the decision in the Smellie case. They characterize the rule enunciated in that case as "erroneous, unsound and contrary to the great weight of authority," and, in effect, ask this court to overrule it. This court, as an intermediate appellate tribunal, is bound by the decisions of the Supreme Court, and the rule enunciated in the Smellie case has been approved by the Supreme Court many times, and, as said by Chief Justice Gibson in *Speck* v. *Sarver*, 20 Cal.2d 585, at page 590 [128 P.2d 16]: "[T]he rules as to the nature of rebuttable presumptions upon which the foregoing opinion is based have been fixed by many decisions of this court, and any modification of such rules should be effected by the Legislature, and not by overruling at this time the cases establishing them."

We, therefore, conclude that respondents were entitled to the presumption that decedent McKinley took ordinary care

of his own concerns; that such presumption, though a rebuttable one, was evidence in the case; that the testimony of appellant Frank Leo, Jr., who was called by respondents under section 2055 of the Code of Civil Procedure, is not to be regarded as evidence of respondents and hence does not dispel or overcome the presumption of due care on the part of the deceased, but merely creates a conflict with the presumption; and that the finding of the trial court that the deceased was not guilty of contributory negligence is supported by the record.

What we have said relative to the second contention of appellants Southern Pacific Company and its employees applies also to the contention of appellant Frank Leo, Jr., that decedent was guilty of contributory negligence.

The next contention of appellants Southern Pacific Company and its employees is that the trial court erred in granting respondents' motion to compel said appellants to produce written reports of the accident made by appellants Ahlborn and Shafer (the engineer and fireman) to their superior. Upon cross-examination of said appellants respondents brought out the fact that they had made written reports to B. E. Stone, their superior, and counsel for respondents thereupon demanded said statements and moved the court for an order requiring appellants to produce them, which motion was granted by the court over the objection of said appellants. Appellants concede that no prejudice resulted to them from said ruling but urge that it is a question of some importance and should be determined by this court.

It is, of course, elementary that the right of a person to his private books and papers is not to be violated except where the power to do so clearly appears. In *Kullman, Salz & Co.* v. *Superior Court,* 15 Cal.App. 276, this court said at page 286 [114 P. 589]:

"We do not, of course, intend to be understood as saying that there is no power in the court to compel the production of private books and papers, or that such power is inconsistent with the constitutional provision, for 'when a witness is in court, no matter how brought there, and discloses the fact that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it.' (*Ex parte Clarke,* 126 Cal. 238, [77 Am.St.Rep. 176, 58 P. 546, 46 L.R.A. 835].) But what we do intend to say is that such

power can be exercised by the court only where the facts clearly and without question warrant it. . . ."

In *Morehouse* v. *Morehouse*, 136 Cal. 332, 337 [68 P. 976], the court, quoting from *Ex parte Clarke*, 126 Cal. 235, 239 [58 P. 546, 77 Am.St.Rep. 176, 46 L.R.A. 835], said: "[W]hen a witness is in court . . . and discloses that he has a paper, document, or book which would be evidence in favor of the party desiring it, he may, in a proper case, be rightfully ordered to produce it." See, also, *Freel* v. *Market St. Cable Ry. Co.*, 97 Cal. 40, 44 [31 P. 730]; *Hirshfeld* v. *Dana*, 193 Cal. 142, 153 [223 P. 451]; *Cordi* v. *Garcia*, 39 Cal.App. 2d 189, 196 [102 P.2d 820]. And in the latter case the court, after citing *Morehouse* v. *Morehouse, supra,* said that the right of defendants' attorney to inspect and use letters in question for impeachment purposes might have been properly granted.

Appellants assert that no showing was made in this case that anything in the requested statements was material to the issues in the instant case, but it is difficult to undersand how written reports by the engineer and the fireman to their superior as to the details of the accident could fail to be material. Where the engineer and fireman were witnesses and testified as to such details, and in the course of such testimony stated that they had made such written reports, it was, in our opinion, clearly proper for the trial court to grant respondents' motion to order appellants to produce said statements for respondents' use in further cross-examination. If there were statements in said reports inconsistent with the testimony of the witnesses, respondents were entitled to use them for impeachment purposes, and if there were no inconsistent statements in said reports, no possible injury could result to appellants. A trial court must be depended upon to exercise a wise discretion in such matters to protect a party from any unnecessary disclosure to others of the contents of his private books, papers and records, but no party has a right to refuse to produce any report or document which may have a bearing upon the facts of the pending litigation.

The final contention of appellants Southern Pacific Company and its employees is that the trial court erred in permitting the witness Stanchfield to testify as to the speed of the engine. There is no merit in this contention and said appellants devote only a few lines of their brief to it.

The witness Stanchfield stated the facts that he took into consideration in giving his opinion as to the speed, and these factors were taken from the evidence. The weight of the testimony was a matter for the trial court but we cannot hold that it was erroneously admitted.

The instant case is one in which it must be stated that, so far as the record is concerned, the evidence clearly preponderates in favor of appellants. However, the trial court, after hearing the evidence, observing the witnesses, and reading the briefs of respective counsel, found in favor of respondents, and thereafter denied appellants' motions for a new trial. As we have hereinbefore pointed out, the evidence is sufficient to support the judgment, and no prejudicial errors have been committed.

In view of the foregoing, the judgment is affirmed.

Thompson, Acting P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 7, 1947. Edmonds, J., and Traynor, J., voted for a hearing.