[Civ. No. 3178. Fourth Dist. Jan. 18, 1946.]

OSCAR MIZE et al., Respondents, v. A. W. DAVY et al., Appellants.

Hoge, Pelton & Gunther, Mack, Werdel & Bianco and Alden Ames for Appellants.

Dorris and Fleharty for Respondents.

BARNARD, P. J.—This is an action for damages arising from the collision of an Oldsmobile with a taxicab owned by the defendant Davy and driven by the defendant Jeske. The Oldsmobile was owned by the plaintiff Mize and was driven by the plaintiff Mason, who was about 18 years old. The other minor plaintiffs were passengers in that car.

The accident happened near the junction of Tulare Street and Bernard Street in the city of Bakersfield. Bernard Street runs east and west and Tulare Street comes into it

from the north but ends there. At the time in question the Oldsmobile, which had been proceeding south on Tulare Street, turned to the west on Bernard Street and collided with the taxicab at a point some 25 or 30 feet west of the westerly line of Tulare Street. The taxicab was proceeding east on Bernard Street and at the time of the accident was well over on the north or wrong side of the street.

A jury's verdict awarded $300 to Oscar Mize for damage to his automobile, $2,500 to Mason, $100 to Richard Mize, $100 to Jack Mize and nothing to Odell Mize. Judgment was entered accordingly and the defendants have appealed.

Although it is admitted that the driver of the taxicab was negligent in being on the wrong side of the street it is argued that the sole cause of the accident was the negligence of Mason, the driver of the other car, and that, in any event, it conclusively appears that he was guilty of contributory negligence. That the driver of the taxicab was guilty of negligence appears beyond question. It appears from the testimony of three witnesses that as the Oldsmobile approached Bernard Street Mason slowed down to five or ten miles an hour, looked both ways, changed to second gear, and turned west on Bernard Street well to the north of the center line of that street. These witnesses testified that just after this turn was made and when they had proceeded about 25 feet on Bernard Street the taxicab suddenly came from behind a Ford car, which was approaching from the west on Bernard Street and which was then almost opposite the Oldsmobile, and that the taxicab thus suddenly appeared in front of the Oldsmobile, causing the head-on collision which occurred. The driver of the taxicab, while admitting that he was on the wrong side of the street, testified that he passed another car some 300 feet west of the point of collision and that he had not yet returned to his own side of the street when the accident happened. While there is some conflict as to how long the taxicab had been driven on the wrong side of the street there is none on the fact that it was on the wrong side of the street, and there is nothing to support the contention that the sole cause of the accident was negligence on the part of the driver of the Oldsmobile.

It cannot be held, as a matter of law, that the driver of the Oldsmobile was guilty of contributory negligence. In support of this contention the appellants rely on certain evidence that there were skid marks coming around the turn

from the north and leading up to where the Oldsmobile stopped, and that there were certain marks in the gravel which indicated that the car making these skid marks had also skidded sideways while making the turn. Two officers expressed the opinion that these skid marks were made by the Oldsmobile and that from observing the skid marks they would estimate that the car making them was going 30 or 35 miles an hour when it came around the corner. It is argued from this that negligence on the part of the driver of the Oldsmobile conclusively appears. Aside from the weakness of this testimony as to excessive speed in making the turn, there was positive and unrebutted evidence, based upon a comparison of the tread of the tires of the Oldsmobile with tread marks appearing in the skid marks, to the effect that these skid marks were not made by the Oldsmobile. There was also the evidence of three witnesses that this car was driven around this corner at a slow rate of speed and without getting very near the center line of Bernard Street. The matter of proximate cause also presented a question of fact for the jury. It is also argued that contributory negligence appears in that at the time of the accident the Oldsmobile was six or eight feet north of the center line of Bernard Street, it being argued that its driver was violating section 525 of the Vehicle Code in that he was not then driving as close as practicable to the right-hand curb or edge of the roadway. There is evidence that there was no curb on the north side of Bernard Street and that grass and weeds grew out to the edge of the traveled portion of the street. The driver of the Oldsmobile had proceeded but a few feet after making the turn. Aside from other considerations, it cannot be held as a matter of law that he was violating this statute. (*Mathers* v. *County of Riverside*, 22 Cal.2d 781 [141 P.2d 419].) On the record before us, the entire question of contributory negligence was one of fact for the jury and not one of law.

The appellants further contend that the verdict of $2,500 in favor of Mason is excessive. In support of their contention that Mason was not seriously hurt they rely on a portion of the testimony given by some of the doctors who treated him, and on the testimony of one of the officers that immediately after the accident Mason told him that he was not hurt and that he seemed more concerned about one of the smaller boys who was unconscious.

There is evidence of special damages suffered by this respondent amounting to approximately $1,000 including loss of wages, doctor bills and hospital bills. He was 18 years old, was married and had previously been strong and healthy. It appears that the steering wheel was badly bent from contact with his body. He was treated that day at the Kern General Hospital, and was then suffering pain in his stomach, back and over his body. He was allowed to go home and three days later was taken to another hospital where he remained for nine days. The doctor who first examined him found evidence of internal bleeding, either in his stomach or in his higher intestines. There is evidence of considerable pain and sleeplessness. He was treated by a doctor several times a week for seven weeks. He was unable to work for three months and he was still suffering pain and some disability at the time of the trial, which was six months after the accident. His doctor testified that he had developed a duodenal ulcer as a result of the injuries he received in this accident; that this might or might not heal in time and with proper care and diet; that it would require diet and care; and that the sort of diet required would interfere with a man working at physical labor, as this respondent was, since such a person could not eat as much as he needed to keep up his strength. The evidence, although conflicting, is ample to support the amount in question, and it cannot be held that it is so excessive as to indicate that it was the result of passion or prejudice on the part of the jury.

Finally, it is contended that counsel for the respondents, by repeated reference to the subject of insurance companies, was guilty of misconduct which was sufficiently prejudicial to require a reversal. Four instances are cited as supporting this charge. 1. In his opening statement counsel for the respondents, after describing the accident said: "and after the accident, while he was still there, Mr. Murray, from the Adjustment Bureau,——." Counsel for the appellants then interrupted, objecting "to any reference to Mr. Murray or any insurance company." He also assigned the matter as prejudicial error and made a motion for a mistrial. The court denied the motion for mistrial but instructed counsel for the respondents to omit such references from his statement. Counsel then stated that "There was a person there" and that this person took Mason and one of the other boys to the Haberfelde Building and kept them there about two hours and fifteen minutes. This was cited as prejudicial error and another

motion made for a mistrial. The court denied this motion but instructed counsel to leave these matters out saying "The conversations they had in the meantime has nothing to do with it." 2. During his testimony respondent Mason was asked by his counsel where he went after the accident and how he got there. An objection was made and sustained unless the witness wanted to testify that they took him to a hospital. The witness then said that he went to a hospital that evening "but before I went to the hospital——." The court interrupted saying "That answers it." Counsel for the respondents then asked "You went to the hospital, what time?" The witness replied "After they turned me loose." Counsel for the appellants moved to strike the answer, assigned it as misconduct, and asked that the jury be admonished to disregard it. The court struck out the answer but did not admonish the jury at that time. 3. While the respondent Oscar Mize was on the stand he stated in response to a question that he first saw his son two and one-half hours after the accident. He was asked "Where was he then" and replied: "Well, he was in the Yellow Cab Insurance Company car. They had brought him back from——." Counsel for appellants assigned this as misconduct on the part of the attorney for the respondents and as prejudicial error, and moved for a mistrial. The court denied the motion for a mistrial, admonished the jury not to regard anything that had been said regarding an insurance company, stated "There is no insurance company in this case", and then said that he did not think that counsel anticipated this answer. Counsel for respondents then replied: "No I didn't, Your Honor." 4. In his argument to the jury counsel for respondents said: "Now, in insurance cases that doctor is paid by the State——." Counsel for the appellants interrupted assigning "Counsel's repeated reference to insurance doctors as prejudicial error and misconduct" and moved for a new trial. The court instructed the jury to disregard any statement about insurance and counsel for the respondents then said: "I am just illustrating a class of cases, not this case."

In the first instance, counsel for respondents mentioned someone from an adjustment bureau and counsel for the appellants first mentioned an insurance company. It was then stated that someone had taken the two boys to the Haberfelde Building and kept them there over two hours. The court instructed counsel for respondents to omit these matters, stating that any conversations during this time had nothing

to do with the case. In the second instance, the respondent Mason volunteered the statement that he went to the hospital "after they turned me loose." The judge struck out the statement saying that the witness "probably doesn't know any better." In the third instance the respondent Oscar Mize improperly stated that he saw his son in an insurance company car. It does not certainly appear that this was designed by respondent's counsel and the court immediately admonished the jury not to regard anything that had been said regarding an insurance company, adding that there was no insurance company in this case. In the fourth instance a reference was made to insurance doctors in industrial accident cases, by way of illustration, and the court again instructed the jury to disregard any statements about insurance. In his final instructions the court instructed the jury not to consider remarks made by counsel as evidence, to disregard any evidence which had been stricken, and to decide the case solely on evidence which had been admitted by the court. Another instruction read as follows: "The question of insurance has been mentioned in this case. I instruct you that this is a case between the plaintiff on one hand, and the defendants on the other. No insurance company is a party to or interested in this action.

It is hard to understand why counsel will persist in jeopardizing good cases in this way. If counsel alone could be punished the answer would be easy.

While counsel's conduct in this regard is not to be commended and while it justifies a suspicion that he was attempting to indirectly get the matter of insurance before the jury, it cannot be here held, under established law, sufficiently prejudicial to justify a reversal. The evidence on the controlling questions of negligence was not so evenly balanced as to indicate the probability of a different result had the misconduct in question not occurred. (*Baker* v. *Rodriguez,* 41 Cal.App.2d 58 [105 P.2d 1018], and cases there cited.) The matter was presented on a motion for a new trial and the court's decision thereon is entitled to considerable weight here. (*Mullanix* v. *Basich,* 67 Cal.App.2d 675 [155 P.2d 130].) It does not clearly appear that this verdict, in whole or in part, was affected by this matter or that the amount allowed suggests prejudice as a result thereof. (*Shriver* v. *Silva,* 65 Cal.App.2d 753 [151 P.2d 528].) It cannot be held that such misconduct as here appears was not sufficiently

cured by the striking out of certain evidence and by the admonitions and instructions of the court. (*Nagamatsu* v. *Roher,* 10 Cal.App.2d 752 [53 P.2d 174].)

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.