[Civ. No. 13825. First Dist., Div. Two. Apr. 27, 1949.]

ALBERT WILLIAM SHELDON, Respondent, v. THE RIVER LINES et al., Appellants.

Hoge, Pelton & Gunther, John H. Black, Edward R. Kay and Leo V. Killion for Appellants.

Melvin M. Belli and Lou Ashe for Respondent.

GOODELL, J.—This appeal was taken from a judgment on the verdict for $20,000 in a Jones Act [38 Stats. 1185, 46 U.S.C.A. § 688] case.

The S. S. "San Joaquin," one of appellant's river boats, was tied to the dock in San Francisco and respondent, one of her crew, was engaged in getting the shore-end of her gangplank onto the dock. From the plank's end he had carried a rope line to a motor jitney, to which he had tied it. The jitney on the dock then backed, thereby exerting a pull on the plank which made the line taut. Respondent had hold of one end of the line, which he was guiding, in such a way as to make him responsive to the pulling operation and, according to his testimony, a jerk of the jitney twisted him to his left. He dropped the rope, limped away, and could not straighten up. He was taken to the Marine Hospital. After spending a few days thereafter in his hotel room he returned to the hospital, where he underwent an operation for a ruptured intervertebral disc. He was in the hospital for four and a half months, during seven weeks of which time he was in a cast from his neck to his pelvis. He had not worked from the time of injury to the time of trial.

Appellant does not question the sufficiency of the evidence to support the verdict, but argues that respondent's case was a weak one. It makes no claim of excessive damages, but argues that the verdict was high for such a case.

The two points presented on this appeal are claimed misconduct of respondent's counsel and prejudicial error in an instruction.

The alleged misconduct occurred during plaintiff's argument to the jury. There had been a conference in chambers respecting an earlier episode and immediately on returning to the courtroom and resuming the argument plaintiff's counsel said: ". . . and compare that with the opening statement of the insur—of the steamship company." Court and counsel again went into chambers where the following transpired:

"Mr. Hoge: . . . we are assigning counsel's reference to insurance here as misconduct, and we are going to ask the Court to declare this case a mistrial. It hasn't been ten minutes since we were in here making a motion for a mistrial on the ground that he made reference to an insurance company; and here, within fifteen minutes after, we are going through the same thing. He said before that that was called a slip of the tongue and makes reference to an insurance company. We are going to ask the Court to declare a mistrial.

"Mr. Belli: There is no purpose on my part in mentioning the insurance company. If it is a slip of the tongue——

"The Court: Let's assume now—and I think it was a slip of the tongue—— . . .

"Mr. Belli: I saw the representative of the insurance company sitting there and I am intent on him sitting there, and I have no purpose to mention the word 'insurance.'

"The Court: I am thinking of the effect.

"Mr. Belli: It has no effect when it is a steamship company involved and not an insurance company. If it were an individual, there might be something to hope for. I don't think this is enough—if it is a steamship company I would rather have them as a defendant than an insurance company . . .

"The Court: Well, I am going to deny the motion for a mistrial the second time . . ."

■ Appellant moved for a new trial and filed affidavits, but in requesting the transcript it did not ask for the affidavits. Accordingly the transcript fails to show what was said during the first episode of claimed misconduct; it shows only the discussion in chambers. In the absence from the record of the alleged objectionable language we cannot review the first episode. (See *Mudrick* v. *Market St. Ry. Co.*, 11 Cal.2d 724, 737 [81 P.2d 950, 118 A.L.R. 533].)

■ The only misconduct problem presented is that which arises from the statement: ". . . and compare that with the opening statement of the insur—of the steamship company."

Appellant contends that this was a close case and that where the evidence is equally balanced the injection of insurance into the case is particularly prejudicial (10 Cal.Jur. 10-Yr.Supp. (1936 ed.) pp. 664-5; *Citti* v. *Bava*, 204 Cal. 136 [266 P. 954]). At 10 California Jurisprudence Ten-Year Supplement, page 672, it is said: "As to whether the injection into a case of information as to liability insurance constitutes prejudicial error depends upon the circumstances of the particular case. In determining this question the good or bad faith of counsel in eliciting the fact that a party is insured is important; in fact, in one case it is said to be the 'test generally applied.' In any event, it is established that a reversal may be ordered if it appears that the fact of insurance was deliberately injected into the case with the intent of influencing or prejudicing the verdict, and the evidence is so evenly balanced as to render it probable or possible that the

jury were influenced, or if the evidence preponderates in favor of the unsuccessful party.''

On the question of good or bad faith the trial judge in chambers characterized the remark as ''a slip of the tongue.''

The next inquiry is whether the evidence is so evenly balanced as to render it probable that the jurors were influenced.

Respondent testified that he made the line fast to the jitney by tying it around the front of the motor. He said ''I didn't put a knot in; I took a couple of round turns; that is the reason you have to hold the line, so there is no knot in there.'' Witness Thompson, who was operating the jitney, testified that he saw respondent pass the line around and carry it to the jitney and secure it with a knot. The superintendent of the dock also testified that he saw respondent tie the knot.

With respect to the jerk, respondent when asked to ''Tell us what the jitney did and what you did,'' answered ''Well, I was holding onto one end of the line there, and she gave a jerk and so it just twisted me a little bit.'' Witness Thompson was not asked whether there was *any* jerk *at any time,* but was asked: ''Was there any jerk *when you started to pull the plank off?* Did you jerk the jitney?'' (emphasis added) and answered ''No, I did not.'' When asked ''Did anything unusual happen in pulling it off, as far as you know?'' he answered ''Nothing at all.''

Treating this testimony, however, as a clear-cut denial that there was any jerk at all, it raises a conflict. There is a conflict, also, as to whether the line was made fast to the jitney with a knot or merely by a couple of turns around the motor. These were the only conflicts in the case so far as concerns the accident itself. But a conflict does not necessarily make the case a close one (*Hatfield* v. *Levy Bros.,* 18 Cal.2d 798, 815 [117 P.2d 841]).

Moreover, respondent's testimony that there was a jerk finds support in the fact that he did unquestionably sustain a ruptured disc, and ruptured discs admittedly are caused by jerks. The jury presumably treated this as corroborative of respondent's version and thus resolved that conflict in his favor. The conflict as to whether the line was tied with a knot appears to be inconsequential.

The medical evidence was free from substantial conflict. As to the main inquiry, whether the injury was a ruptured intervertebral disc of traumatic origin there was no dispute. Moreover, appellant's medical witness testified on cross- exami-

nation that it does not take much of a twist or sprain to cause such a rupture.

For these reasons we are not convinced that the evidence was so evenly balanced as to indicate the probability of a different result had the challenged statement not been made (*Mize* v. *Davy,* 72 Cal.App.2d 607, 613 [165 P.2d 26]; *Baker* v. *Rodriguez,* 41 Cal.App.2d 58, 62, 63 [105 P.2d 1018]).

The trial judge heard the utterance of the two syllables, "insur—" and could determine from the tone and general character of the utterance whether it was likely to have impressed the jury in a way prejudicial to the defense, and whether it was intentional and calculated or a mere slip. He first had occasion in chambers to consider its effect when the issue was fresh, and was in a much better position than is an appellate court to weigh it in all its aspects. (*Lafargue* v. *United Railroads,* 183 Cal. 720, 724-5 [192 P. 538].) The record shows that he then considered it a mere slip. He had occasion to consider it again on the motion for new trial, the denial of which indicates that he adhered to his first conclusion. In *Levens* v. *Stocco,* 5 Cal.App.2d 693, 695 [43 P.2d 357] the court said: "where the trial court denies a motion for a new trial, based upon the ground of misconduct of plaintiff's attorney, it must be deemed to have concluded that the questions were asked in good faith . . . and that no prejudice resulted therefrom [citations]." In *Hatfield* v. *Levy Bros., supra,* the Supreme Court at page 814 cites and follows the Levens case and says: "A denial of a motion for a new trial made upon the ground of misconduct of counsel, although not binding on this court, is entitled to great weight upon an appeal in which complaint is made of the misconduct [citations]."

The court *sua sponte* instructed the jury "that no insurance company is a party to this action."

We are satisfied that there was no abuse of discretion in the denial of a new trial on the misconduct ground.

 Appellant's only other point is that the following instruction was erroneous:

"XIV. You are not necessarily to give greater weight to the side producing the greater number of witnesses, but you are to find for the side producing that witness, or those witnesses, who is, or are, believed by you. In this regard, I instruct you that the testimony of any one witness, if believed by you, is sufficient to prove any fact or facts in dispute."

Appellant's criticism is that "it instructs the jury that

the degree of proof required in a civil case is not the *preponderance of the evidence* but proof of a fact or facts to the *mere* belief of the jury." (Emphasis appellant's.)

Shortly before XIV was given the following instruction was read: "IV . . . You are not bound to decide in accordance with the testimony of any number of witnesses against a less number or against a presumption or other evidence satisfying your minds. The direct evidence of one witness, who is entitled to full credit, is sufficient for proof of any fact in a civil case."

After the latter (IV) but before the former (XIV) was read, the jury was instructed as follows:

"VIII . . . The burden of proof in this case is upon the plaintiff to sustain the allegations of his complaint by a preponderance of the evidence . . .

"IX . . . by a 'preponderance of evidence' is meant such evidence as, when weighed with that opposed to it, has more convincing force . . .

"XI. When the evidence in your judgment is so equally balanced in weight and quality, effect and value, that the scales of proof hang even, your verdict should be against the party upon whom rests the burden of proof . . ."

The jury was told at the beginning and again at the end of the charge that the instructions were to be considered as a whole and that no part was to be singled out.

When the instructions are read as a whole (*Megee* v. *Fasulis*, 65 Cal.App.2d 94, 99 [150 P.2d 281]) no foundation is found for appellant's criticism. Instruction XIV was nothing but an elaboration and extension of instruction IV, and could not conceivably have given the jury any erroneous or unorthodox idea of the meaning of preponderance of the evidence. It did no harm to the appellant (see *Radisich* v. *Franco-Italian Packing Co.,* 68 Cal.App.2d 825, 843 [158 P.2d 435]).

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied May 27, 1949, and the following opinion was then rendered:

THE COURT.—After decision appellant noticed a motion to augment the record to show an earlier reference to insurance similar to that discussed in the opinion. At the time noticed there was no appearance and we denied the motion. How-

ever, the parties have stipulated that appellant's request for augmentation may be now considered.

The deficiency in the record was called to appellant's attention at oral argument but no correction was attempted, hence there is good reason to refuse such belated augmentation.

Notwithstanding this, and treating the first episode as before us, a different result should not be reached since the trial court did not consider either episode (or both of them) of sufficient consequence to call for a new trial.